1    Gary D. Leasure (Cal. State Bar No. 211160)
Law Office of Gary D. Leasure, APC
2    12625 High Bluff Drive # 103
San Diego, California 92130
3    Telephone: (858) 720-1992, Ext. 202
Facsimile: (858) 720-1990
4    *Local Counsel for Plaintiffs*

5    Jim Bopp, Jr. (Ind. State Bar No. 2838-84)*
Joe La Rue (Ohio State Bar No. 80643)*
6    BOPP, COLESON & BOSTROM
1 South 6th Street
7    Terre Haute, Indiana 47807
Telephone: (812) 232-2434
8    Facsimile: (812) 235-3685
*Lead Counsel for Plaintiffs*

9

10    * *Pro hac vice application granted by the Court on December 30, 2009.*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Phil Thalheimer; Associated Builders & Contractors PAC sponsored by Associated Builders & Contractors, Inc. San Diego Chapter; Lincoln Club of San Diego County; Republican Party of San Diego; and John Nienstedt, Sr.** | **Case: 3:09-cv-2862-IEG-WMC** |
| **Plaintiffs,** | **Notice of Cross-Appeal** |
| **v.** | **Preliminary Injunction Appeal** |
| **City of San Diego** | |
| **Defendant.** | |

Notice is hereby given that Plaintiffs, Phil Thalheimer; the Associated Builders & Contractors PAC sponsored by Associated Builders & Contractors, Inc. San Diego Chapter, the Lincoln Club of San Diego County, the Republican Party of San Diego; and John Nienstedt, Sr., appeal to the United States Court of Appeals for the Ninth Circuit from the Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction, entered in this action on February 16, 2010, including but not limited to 1) the Order's denial of a Preliminary Injunction as to Section 27.2938, which prohibits candidates from soliciting, accepting, and spending

1   contributions more than 12 months before the primary election; and 2) the Order's denial of a

2   Preliminary Injunction as to Section 27.2950, to the extent it prohibits candidates from soliciting

3   and accepting contributions from non-individuals other than political parties.

4       This appeal is a cross-appeal. The City of San Diego filed a notice of appeal of the

5   Court's Order on March 5, 2010 (Doc. 48).

6

7   March 18, 2010                                         Respectfully Submitted,

8

9

10  Gary D. Leasure (Cal. State Bar No.                    Jim Bopp, Jr. (Ind. State Bar No. 2838-84)*
    211160)                                                Joe La Rue (Ohio State Bar No. 80643)*
11  Law Office of Gary D. Leasure, APC                     BOPP, COLESON & BOSTROM
    12625 High Bluff Drive, Suite 103                      1 South 6th Street
12  San Diego, California 92130                            Terre Haute, Indiana 47807
    Telephone: (858) 720-1992, Ext. 202                    Telephone: (812) 232-2434
13  Facsimile: (858) 720-1990                              Facsimile: (812) 235-3685
    *Local Counsel for Plaintiffs*                         *Lead Counsel for Plaintiffs*
14
                                                               * *Pro hac vice application granted*
15                                                         *by the Court on December 30, 2009.*

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF CROSS-APPEAL                          -2-                    *Thalheimer v. City of San Diego,*
                                                                      3:09-cv-2862-IEG-WMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PHIL THALHEIMER; ASSOCIATED
BUILDERS & CONTRACTORS PAC
SPONSORED BY ASSOCIATED
BUILDERS & CONTRACTORS, INC.
SAN DIEGO CHAPTER; LINCOLN CLUB
OF SAN DIEGO; REPUBLICAN PARTY
OF SAN DIEGO; and JOHN NIENSTEDT,
SR.,

                    Plaintiffs,

vs.

CITY OF SAN DIEGO; City of San Diego
Ethics Commissioners RICHARD M.
VALDEZ, Chair, W. LEE BIDDLE,
GUILLERMO ("GIL") CABRERA, CLYDE
FULLER, DOROTHY LEONARD, and
LARRY S. WESTFALL, all sued in their
official capacity; THE HONORABLE
JERRY SANDERS, Mayor of San Diego,
sued in his official capacity; JAN
GOLDSMITH, City Attorney for the City of
San Diego, sued in his official capacity; and
ELIZABETH MALAND, City Clerk of San
Diego, sued in her official capacity,

                    Defendants.

CASE NO: 09-CV-2862-IEG (WMc)

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION**

[Doc. No. 3.]

Presently before the Court is Plaintiffs' Motion for Preliminary Injunction.  Defendant City of

San Diego has filed an opposition, and Plaintiffs have filed a reply.  The Court heard oral argument on

1

January 25, 2010.  For the reasons stated herein, the Court grants in part and denies in part Plaintiffs'
motion.

**FACTUAL BACKGROUND**

The following facts are drawn from Plaintiffs' Verified Complaint.  The Court sets out only
those facts necessary for resolving the requested injunction.  Plaintiffs Phil Thalheimer, Associated
Builders & Contractors, Inc. San Diego Chapter, Lincoln Club of San Diego County, San Diego
County Republican Party, and John Nienstedt ("Plaintiffs") bring this action challenging the
constitutionality of San Diego's campaign finance laws on First Amendment grounds.  Plaintiffs seek
to enjoin enforcement of these laws.  Plaintiffs' complaint names as defendants the City of San Diego
("the City") and several government officials in their official capacity.[1]

Plaintiffs challenge five provisions of the San Diego Municipal Election Campaign Control
Ordinance ("ECCO"), arguing they are unconstitutional, both facially and as applied to Plaintiffs:

    (1)    **§ 27.2935**: $500 limit for contributions by individuals to candidates and committees supporting or opposing a candidate.

    (2)    **§ 27.2936**: Requirement that money spent by committees to support or oppose a candidate must be attributable to contributions from individuals (not over the $500 limit).

    (3)    **§ 27.2938**: Prohibition on soliciting or accepting contributions prior to 12 months before the primary election, also interpreted to extend to candidates spending their own money in support of their candidacy prior to 12 months before the primary election.

    (4)    **§ 27.2950**: Prohibition on contributions to candidates from non-individuals, including political parties and corporations.

    (5)    **§ 27.2951**: Prohibition on accepting contributions that are drawn against a checking account or credit card belonging to a non-individual.

Plaintiff Phil Thalheimer is a resident of San Diego considering running for a City Council seat
in San Diego in 2012.  He is preparing for a possible run in District 1 or in a new ninth district, if San

---

[1] On January 8, 2010, the Court granted the parties' joint motion to dismiss all defendants except the City of San Diego.  Pursuant to the joint motion, these defendants are bound by the Court's rulings with respect to the matters at issue.

Diego's voters vote to create it next June and he lives within its boundaries.  District 1 is served by incumbent Sherry Lightner, and Plaintiff Thalheimer believes that under the current laws he may not be able to raise the funds necessary to run against an incumbent.  He would use his own money to advertise his potential candidacy now and begin soliciting contributions now, but for the law prohibiting acceptance of contributions prior to the twelve months preceding the primary election.  Plaintiff Thalheimer would also solicit contributions from political action committees and other organizational entities, but for the law prohibiting contributions from non-individuals.

Plaintiff Associated Builders & Contractors, Inc. ("ABC PAC") is a committee formed by the Associated Builders & Contractors, Inc., San Diego Chapter, registered in California as a political action committee.  Plaintiff ABC PAC receives most of its contributions from business entities.  Plaintiff ABC PAC would make independent expenditures, but for the law providing that independent expenditures to support or oppose a candidate must be funded by contributions from individuals (up to $500 per individual).

Plaintiff Lincoln Club is an organization of politically like-minded business and civic leaders in San Diego County, registered as a political action committee.  Plaintiff Lincoln Club would make independent expenditures in amounts greater than can be attributable to contributions from individuals in amounts no greater than $500.  Plaintiff Lincoln Club also wants to be able to use contributions from business entities to make independent expenditures.

Plaintiff San Diego County Republican Party is San Diego's local organization for the Republican Party.  The party would make coordinated expenditures with Republican candidates, but for the law banning contributions from non-individuals to candidates.

Plaintiff John Nienstedt is a resident of California who intends to contribute the full amount allowed by law to a candidate in the San Diego City Council and/or citywide elections.  Plaintiff Nienstedt would contribute money to this candidate now, but for the law prohibiting acceptance of contributions prior to the twelve months preceding the primary election.

**PROCEDURAL HISTORY**

On December 21, 2009, Plaintiffs filed a Verified Complaint and the motion for a preliminary injunction.  (Doc. Nos. 1 & 3.)

1   On January 13, 2010, the City filed a motion to dismiss and a motion to strike.  (Doc. Nos. 11

2   & 12.)  Hearing on those motions is set for February 22, 2010.

3   On January 19, 2010, the Court granted the American Civil Liberties Union of San Diego and

4   Imperial County's ("ACLU") motion for leave to file a brief as amicus curiae in support of Plaintiffs'

5   motion.  (Doc. No. 16.)  The City filed a reply to the ACLU's amicus brief.  (Doc. No. 19.)  On

6   January 27, 2010, the Court also granted Common Cause leave to file an amicus brief in support of the

7   City's opposition.  (Doc. No. 23.)

**DISCUSSION**

8   **I.   LEGAL STANDARD**

9   Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing

10   that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., — U.S. —, 129

11   S.Ct. 365, 375-76 (2008).  A party seeking a preliminary injunction must demonstrate: (1) the

12   likelihood of success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary

13   relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public

14   interest.  Id. at 374.

15   **II.   ANALYSIS**

16   **A.   Likelihood of Success on the Merits**

17   **1.   Campaign Finance Laws and Levels of Scrutiny**

18   The United States Supreme Court has held that campaign contribution and expenditure

19   limitations "operate in an area of the most fundamental First Amendment activities."  Buckley v.

20   Valeo, 424 U.S. 1, 15 (1976). "A restriction on the amount of money a person or group can spend on

21   political communication during a campaign necessarily reduces the quantity of expression by

22   restricting the number of issues discussed, the depth of their exploration, and the size of the audience

23   reached."  Id. at 19.  "This is because virtually every means of communicating ideas in today's mass

24   society requires the expenditure of money."  Id.

25   The Court has drawn a clear line between limits on contributions and limits on independent

26   expenditures.  Contribution limits are "only a marginal restriction upon the contributor's ability to

27   engage in free communication."  Id. at 20.  "A contribution serves as a general expression of support

28

4

for the candidate and his views, but does not communicate the underlying basis for the support." Id. at 21. "The quantity of communication by the contributor does not increase perceptibly with the size of his contribution, since the expression rests solely on the undifferentiated, symbolic act of contributing." Id. By contrast, expenditure limits impose "significantly more severe restrictions on protected freedoms of political expression and association." Id. at 23. Unlike large campaign contributions, expenditures do "not presently appear to pose dangers of real or apparent corruption." Id. at 46; see also Citizens United v. Fed. Election Comm'n, No. 08-205, --- S.Ct. ----, 2010 WL 183856 (Jan. 21, 2010) (concluding that "independent expenditures . . . do not give rise to corruption or the appearance of corruption"). "The absence of prearrangement and coordination of an expenditure with the candidate or his agent not only undermines the value of the expenditure to the candidate, but also alleviates the danger that expenditures will be given as a quid pro quo for improper commitments from the candidate."  424 U.S. at 47.

As such, expenditure limitations are subject to strict scrutiny – they must "satisfy the exacting scrutiny applicable to limitations on core First Amendment rights of political expression." Id. at 44-45. The Supreme Court has "repeatedly adhered to Buckley's constraints . . . on expenditure limits." Randall v. Sorrell, 548 U.S. 230, 236 (2006) (citing cases).  Contribution limitations, on the other hand, are subject to a less rigorous standard of review – they must be "closely drawn" to match a "sufficiently important interest."[2]  Buckley, 424 U.S. at 25.  The Court has routinely upheld contribution limits.  Randall, 548 U.S. at 247 (citing cases).

So far, the only constitutionally sufficient justification for campaign finance laws that the Court has recognized is limiting "the actuality and appearance of corruption resulting from large individual financial contributions."  See Buckley, 424 U.S. at 25-26; see also Davis v. Fed. Election Comm'n, --- U.S. ----, 128 S.Ct. 2759, 2773 (2008).  The Court in Buckley was concerned with the danger of "large contributions . . . given to secure a political quid pro quo from current and potential office holders."  Buckley, 424 U.S. at 26-27.  The Court acknowledges that "restrictions on direct contributions are preventative, because few if any contributions to candidates will involve quid pro quo arrangements."

---

[2] "Contributions" include expenditures coordinated with a candidate or party.  Fed. Election Comm'n v. Colo. Republican Fed. Campaign Comm'n., 533 U.S. 431, 443 (2001).

5

09cv2862

Citizens United, No. 08-205 at 31 (citing Fed. Election Comm'n v. Mass. Citizens for Life, Inc., 479 U.S. 238, 260 (1986); Fed. Election Comm'n v. Nat'l Conservative Political Action Comm., 470 U.S. 480, 500 (1985); Fed. Election Comm'n v. Nat'l Right to Work Comm., 459 U.S. 197, 210 (1982)). The Court has also recognized that the government has a valid anticorruption interest in preventing circumvention of contribution limits.  Fed. Election Comm'n v. Colorado Republican Fed. Campaign Comm., 533 U.S. 431, 456 (2001) (Colorado II) ("[A]ll Members of the Court agree that circumvention is a valid theory of corruption.").

The Court previously stated that the anticorruption interest "extends beyond preventing simple cash-for-votes corruption to curbing 'undue influence on an officeholder's judgment, and the appearance of such influence.'"  McConnell v. Fed. Election Comm'n, 540 U.S. 93, 150 (2003) (quoting Colorado II, 533 U.S. at 456).  The Court has since clarified in its most recent campaign finance case, Citizens United, that "[t]he fact that speakers may have influence over or access to elected officials does not mean that these officials are corrupt."  No. 08-205, at 32.  "Reliance on a 'generic favoritism or influence theory . . . is at odds with standard First Amendment analyses because it is unbounded and susceptible to no limiting principle.'"  Id. (quoting McConnell, 540 U.S. at 296 (Kennedy, J., concurring in part and dissenting in part)).  "The appearance of influence or access, furthermore, will not cause the electorate to lose faith in our democracy."  Citizens United, No. 08-205, at 32.

## 2.    Section 27.2935, $500 Contribution Limitation

Section 27.2935(a) provides: "It is unlawful for an individual to make to any candidate or committee supporting or opposing a candidate, or for any candidate or committee supporting or opposing a candidate to solicit or accept, a contribution that would cause the total amount contributed by that individual to support or oppose the candidate to exceed $500 for any single election."  ECCO § 27.2935(a).  Plaintiffs contend Section 27.2935 is not "closely drawn" because the $500 contribution limit is too low.  This discussion addresses only the $500 limit on contributions to candidates.  The $500 limit on contributions to independent expenditure committees is addressed in the following discussion on Section 27.2936(b).

Both parties rely heavily upon <u>Randall v. Sorrell</u>, 548 U.S. 230 (2006), the only Supreme Court case striking down a contribution limit as too low.  In <u>Randall</u>, the Court held unconstitutional a Vermont campaign finance regulation placing contribution limits on individuals, organizations, and political parties.  <u>Id.</u> at 256.  Although a court has "no scalpel to probe" whether one limit might not serve as well as another, <u>Buckley</u>, 424 U.S. at 30, in <u>Randall</u>, the Court recognized that there exists "some lower bound."  548 U.S. at 248.  "Contribution limits that are too low can also harm the electoral process by preventing challengers from mounting effective campaigns against incumbent officeholders."  <u>Id.</u> at 248-49.  Thus, courts must determine whether the limit prevents candidates from "amassing the resources necessary for effective [campaign] advocacy."  <u>Id.</u> at 248 (quoting <u>Buckley</u>, 424 U.S. at 21).  "[W]here there is strong indication in a particular case, *i.e.,* danger signs, that such risks exist," courts "must review the record independently and carefully" to assess the statute's "tailoring."  <u>Randall</u>, 548 U.S. at 249.  In <u>Randall</u>, the Court found such danger signs present because, as compared with the contribution limits upheld by the Court in the past and with those in force in other States, Vermont's limits were "sufficiently low as to generate suspicion that they are not closely drawn."  <u>Id.</u>  Consequently, the Court examined the trial record to assess the limit's tailoring.  The Court considered five factors that, when "taken together," led it to conclude that the limits were not "closely drawn": (1) the record suggested the limits would significantly restrict funding available for challengers, <u>id.</u> at 253-56; (2) the low limits threatened the right to associate in a political party, <u>id.</u> at 256-59; (3) the limits possibly impeded the effective use of volunteers, <u>id.</u> at 259-60; (4) the limits were not adjusted for inflation, <u>id.</u> at 261; and (5) there was no "special justification" to warrant these burdens, <u>id.</u> at 261.

Here, because the City's $500 limit is a contribution limit, it must be "closely drawn" to a "sufficiently important interest."  Plaintiffs do not dispute that the City has a valid interest in preventing corruption and the appearance of corruption associated with large contributions.  Rather, Plaintiffs argue that the $500 limit is not "closely drawn" to that interest because it restricts small contributions, not just large ones.  Whether the limit is unconstitutionally low because it prevents candidates from amassing the resources necessary for effective campaign advocacy is a fact intensive inquiry.  As the City points out, the Supreme Court and Ninth Circuit have stressed the importance of

7

factual development in reviewing First Amendment challenges to campaign finance laws. [3]  See Citizens United, No. 08-205, at 4 ("It is not the case, then, that the Court today is premature in interpreting § 441b 'on the basis of [a] factually barebones recor[d].'") (quoting Wash. State Grange v. Wash. State Republican Party, 128 S.Ct. 1184, 1191 (2008)); Citizens for Clean Gov't v. City of San Diego, 474 F.3d 647, 653 (9th Cir. 2007) ("[F]ollowing both Supreme Court and Ninth Circuit precedent, we again emphasize the importance of factual development.").  In Randall, the Court considered the trial record, including expert witness testimony regarding the likely effects of contribution limits on the ability of candidates to mount competitive campaigns.

In this case, Plaintiffs do not provide evidence of "danger signs" that the City's limit prevents candidates in San Diego from mounting effective campaigns.[4]  The only evidence proffered by Plaintiffs is that at the May 2008 meeting of the San Diego Ethics Commission, the Commission voted to recommend to the City Council that a $1,000 limit would accomplish the goal of avoiding the appearance of corruption.  (Compl., Exhibit 4.)  However, as the City argues, the fact that the Commission recommended a higher limit does not necessarily mean that a lower amount would be unconstitutional.  Buckley has specifically instructed that "a court has no scalpel to probe, whether, say, a $2,000 ceiling might not serve as well as $1,000." 424 U.S. at 30.  The City Council's "failure to engage in such fine tuning" does not invalidate the limit.  See id.

The little evidence before the Court does not demonstrate that the City's limit is so low as to "generate suspicion" that it is not closely drawn.  The City's $500 limit is not significantly lower than contribution limits upheld by the Court in the past.  See Buckley ($1,000 for federal office); Nixon v. Shrink Missouri Gov't PAC, 528 U.S. 397 (2000) ($275 -1,075 for statewide office); Montana Right to Life Ass'n v. Eddleman, 343 F.3d 1085 (9th Cir. 2003) ($100, $200, and $400 for statewide office).  In

---

[3] The City offers the declaration of Dr. Kousser, listing studies and empirical testing that could be performed in order to determine whether the limit is unconstitutionally low.  (Kousser Decl. in Supp. of. Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj.)

[4] In an effort to evade this issue, Plaintiffs argue in their reply brief that this is not a Randall analysis because they do not argue that the limits keep candidates from amassing the resources necessary to mount effective campaigns.  Plaintiffs contend that their argument is that there is no "special" justification; the limit mutes the voice of political parties; it restricts independent expenditures; and the limits are overbroad because they ensnare small contributions.  However, Plaintiff handpicks factors from Randall which are part of an overall analysis of whether limits that exhibit "danger signs" of preventing candidates from amassing of necessary campaign funds are "closely drawn."

Randall, the only case striking down a limit as unconstitutionally low, the limit was $400 per election cycle ($400 total for both the primary and general elections).  By contrast, the City's limit is $1,000 per election cycle ($500 for the primary, $500 for the general election), more than double the limit in Randall.  The City's limit is also indexed to inflation.[5]  Plaintiffs have not presented evidence of how the limit presently compares with those around the Nation, but the City points to similar limits in Los Angeles ($500 per election) and San Francisco ($500 per election).[6]

Because the factual record is not adequately developed, Plaintiffs have not demonstrated a likelihood of success on the merits regarding this provision.  Therefore, the Court declines to make any determination as to the constitutionality of the City's $500 contribution limit.

**3.      Section 27.2936, Contribution Limitations for Committees**

Section 27.2936(b) provides: "It is unlawful for any general purpose recipient committee to use a contribution for the purpose of supporting or opposing a candidate unless the contribution is attributable to an individual in an amount that does not exceed $500 per candidate per election."[7] ECCO § 27.2936(b).  Plaintiffs argue that this provision is unconstitutional because limiting contributions to committees that make only independent expenditures does not further the City's asserted anticorruption interest.[8]  For the reasons set forth below, Plaintiff is likely to succeed in demonstrating that the City's limit is not "closely drawn" to a "sufficiently important interest."

The Supreme Court instructs that the more novel or implausible the justification for a law, the more evidence is needed to satisfy the applicable level of scrutiny.  McConnell v. Fed. Election Comm'n, 540 U.S. 93, 93 (2003) (citing Nixon v. Shrink Mo. Gov't PAC, 528 U.S. 377, 391 (2000) ("The quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative

---

[5] ECCO §§ 27.2935(f), 27.2937.

[6] Def.'s Req. for Jud. Notice in Supp. of Opp'n to Prelim. Inj., Ex. 3 (San Francisco Campaign & Governmental Code § 1.114); Ex. 4 (Los Angeles City Charter § 470).

[7] A "general purpose recipient committee" is defined as "any person that receives contributions totaling $1,000 or more during a calendar year to support or oppose more than one candidate or measure.  This type of committee is not controlled by a candidate."  ECCO § 27.2903.

[8] Plaintiffs also challenge Section 27.2936(b) on the ground that it makes it unlawful for committees to use contributions attributable to non-individuals – i.e. corporations, partnerships, and other organizational entities.  This issue is in the discussion on Section 27.2950.

9

1    judgments will vary up or down with the novelty and plausibility of the justification raised.").  While

2    cases from other circuits illustrate that the issue is unsettled, this Court finds the correct view is that of

3    the Fourth Circuit and District of Columbia Circuit that it is "implausible" that contributions to

4    committees making only independent expenditures corrupt or create the appearance of corruption.

5    Emily's List v. Fed. Election Comm'n, 581 F.3d 1, 11 (D.C. Cir. 2009) (striking down regulation

6    requiring non-profit political committees to use hard money accounts to pay for communications

7    referring to a federal candidate, where individual donations to hard-money accounts were capped at

8    $5,000 annually); North Carolina Right to Life, Inc. v. Leake, 525 F.3d 274, 291, 293 (4th Cir. 2008)

9    (NCRL III) (striking down contribution limit as applied to committees making only independent

10   expenditures).  The Fourth Circuit and District of Columbia Circuit struck down limits on

11   contributions to independent expenditure committees in the absence of "convincing evidence" of

12   corruption or the appearance of corruption.[9]  See NCRL III, 525 F.3d at 293 ("Given the remove of

13   independent expenditure committees from candidates themselves, we must require . . . convincing

14   evidence of corruption before upholding contribution limits as applied to such organizations.");

15   Emily's List, 581 F.3d at 11.  Similarly, in this case, the City has not put forth sufficient evidence to

16   justify its limitation.

17          In coming to this conclusion, we start with the premise reiterated by the Supreme Court in

18   Citizens United v. Federal Election Commission that "independent expenditures . . . do not give rise to

19   corruption or the appearance of corruption."  No. 08-205, at 31,--- S.Ct. ----, 2010 WL 183856 (Jan.

20   21, 2010).   Here, the City's limit does not restrict direct contributions to candidates, which would

21   address the danger of corruption inherent in "large contributions . . . given to secure a political quid pro

22   quo from current and potential office holders."  See Buckley, 424 U.S. at 26-27.  Rather, the City's

23

24          [9] See also Comm. on Jobs Candidate Advocacy Fund v. Herrera, 2007 WL 2790351, at * 3 (N.D. Cal. Sept. 20,
     2007) (applying strict scrutiny and holding that defendants failed to demonstrate that the limit on contributions to
25   independent expenditure committees furthered an interest in preventing corruption); San Jose Silicon Valley Chamber of
     Commerce Political Action Comm. v. City of San Jose, 2006 WL 3832794 (N.D. Cal. Sept. 20, 2006), vacated and
26   remanded with instructions to dismiss in 546 F.3d 1087 (9th Cir. 2008) (applying strict scrutiny and holding that the
     contribution limit furthered an important government interest only when applied to contribution limits on candidates or
27   committees who coordinate with candidates).

28
                                                        10

limit restricts contributions to committees that make independent expenditures in support of or opposing a candidate.  Independent expenditure committees by definition make expenditures independent of candidates, "rendering it unlikely that such expenditures would be made in exchange for 'improper commitments from the candidate.'"  NCRL III, 525 F.3d at 292 (quoting Buckley, 424 U.S. at 47).  The Court in Citizens United remarked that the record in McConnell v. Federal Election Commission was "over 100,000 pages" long, yet it "[did] not have any direct examples of votes being exchanged for . . . expenditures."  No. 08-205, at 33.  "In fact, there is only scant evidence that independent expenditures even ingratiate."  Id.

     For this reason, the Supreme Court has held that "the governmental interest in preventing corruption and the appearance of corruption is inadequate to justify [a] ceiling on independent expenditures."  Buckley, 424 U.S. at 45; see also Citizens United, No. 08-205 at 31.  Accordingly, individuals, candidates, and ordinary political committees have the right to make "unlimited independent expenditures."  Colorado Republican Fed. Campaign Comm. v. Fed. Election Comm'n, 518 U.S. 604, 618 (1996).  "[T]he First Amendment, as the Court has construed it, safeguards the right of citizens to band together and pool their resources . . . in order to express their views about policy issues and candidates for public office."  Emily's List, 581 F.3d at 4.

     Given the Supreme Court's consistent treatment of independent expenditures, it is implausible that limiting the amount of money that committees can use to make independent expenditures furthers an anticorruption interest.  See id. at 11 ("After all, if one person is constitutionally entitled to spend $1 million to run advertisements supporting a candidate (as Buckley held), it logically follows that 100 people are constitutionally entitled to donate $10,000 each to a non-profit group that will run advertisements supporting a candidate.").  "As the state attempts to regulate entities further and further removed from the candidate, the state interest in preventing corruption necessarily decreases."  NCRL III, 525 F.3d at 293.  Indeed, the Supreme Court "has never held that it is constitutional to apply contribution limits to political committees that make solely independent expenditures."[10]  Id. at 292.

---

[10] NCRL III and Emily's List find further support in Justice Blackmun's statement in his concurring opinion in California Medical Association v. Federal Election Commission that "contributions to a committee that makes only independent expenditures pose no . . . threat" of corruption or the appearance thereof.  453 U.S. 182, 203 (1981) (Cal-Med).  However, the significance of this statement is the subject of some debate.  In Cal-Med, the Supreme Court upheld a $5,000

The City relies on two district court cases, <u>Speechnow.Org v. Federal Election Commission</u>, 567 F. Supp. 2d 70, 78 (D.D.C. 2008)[11] and <u>Working Californians v. City of Los Angeles</u>, Case No. CV-09-08327 (C.D. Cal. Nov. 24, 2009), in which the courts declined to enjoin limitations on contributions to independent expenditure committees.  <u>Speechnow.Org</u> and <u>Working Californians</u> held that the idea that contributions to independent expenditure committees could corrupt was not novel or implausible.  With respect to <u>Speechnow.Org</u>, the court in that case based its broader conception of corruption on the observation that the Supreme Court "left open the possibility that a time might come when . . . independent expenditures made by individuals to support candidates would raise an appearance of corruption."  567 F. Supp. 2d at 78.  However, in <u>Citizens United</u>, the Supreme Court explicitly rejected the possibility that independent expenditures could raise an appearance of corruption.  No. 08-205, at 31 ("[W]e now conclude that independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption.").  The court in <u>Speechnow.Org</u> also relied heavily on the Supreme Court decision in <u>McConnell v. Federal Election Commission</u>.  However, as discussed below, <u>McConnell</u> involved soft money contributions in the context of national political parties, not independent expenditure committees.

In <u>McConnell</u>, the Supreme Court upheld limits on soft money contributions to national political parties, explaining that large contributions to national political parties can, at least, create the appearance of corruption.  540 U.S. 93 (2003).  The <u>McConnell</u> Court based its conclusion on a "voluminous record" replete with evidence of national parties "peddling access to federal candidates and officeholders in exchange for large soft-money donations."  <u>Id.</u>  There was evidence of actual exploitation of the soft-money loophole, and evidence connecting soft money with "manipulations of

---

limit on contributions to multicandidate political committees (committees which make contributions to multiple candidates).  The committees at issue did not make only independent expenditures, and there was no majority opinion on the First Amendment issue.

The dissent in <u>NCRL III</u> argued that the Supreme Court in <u>McConnell</u> rejected Justice Blackmun's statement in <u>Cal-Med</u>: footnote 48 in <u>McConnell</u> "explain[ed] that the <u>Cal-Med</u> Court held the FECA provision constitutional on its face, even though the provision clearly imposed limits on contributions for independent political expenditures."  525 F.3d at 333 (Michael, J., dissenting) (citing <u>McConnell</u>, 540 U.S. at 152 n.48).  On the other hand, the D.C. Circuit in <u>Emily's List</u>, pointed out that footnote 48 must be read in the context of <u>McConnell</u>, which involved contributions to national political parties.  581 F.3d at 14.

[11] The <i>en banc</i> D.C. Circuit heard oral argument on January 27, 2010 on an appeal of the <u>Speechnow.Org</u> case.

the legislative calendar, leading to Congress' failure to enact, among other things, generic drug legislation, tort reform, and tobacco legislation."  Id.  In addition, the Court emphasized the "special relationship" and the "unity of interest" between candidates and officeholders and political parties, which places national parties in a "unique position" to serve as "agents for spending on behalf of those who seek to produce obligated officeholders."  Id.

The Fourth Circuit and D.C. Circuit refused to extend the rationale of McConnell to independent expenditure committees, at least in the absence of some "McConnell-like evidence."  See NCRL III, 525 F.3d at 293 (remarking that unlike national political parties, independent expenditure committees "do not select slates of candidates for elections," "determine who will serve on legislative committees, elect congressional leadership, or organize legislative caucuses")); Emily's List, 581 F.3d at 14 ("Political parties have influence and power in the Legislature that vastly exceeds that of any interest group," and more fundamentally, "non-profits groups do not have the same inherent relationship with federal candidates and officeholders.").  Similarly, in this case, the City has produced no evidence linking contributions to independent expenditure committees with undue influence on a candidate or officeholder's judgment.  Nor does the City contend that a "special relationship" exists that places independent expenditure committees in a position to effect undue influence.  In addition, the Supreme Court has recently explained in Citizens United that "[t]he fact that speakers may have influence over or access to elected officials does not mean that these officials are corrupt," and "[t]he appearance of influence or access, furthermore, will not cause the electorate to lose faith in our democracy."  No. 08-205, at 32.  Because the district court in Working Californians relied principally on the reasoning in Speechnow.Org and McConnell, this Court declines to follow its reasoning.

Finally, the City cites to Caperton v. A.T. Massey Coal Co., Inc.,129 S.Ct. 2252, 2256 (2009) in support of its argument that contributions to independent expenditure committees have the potential to corrupt.   However, the Supreme Court in Citizens United held that Caperton was not contrary to the principle that the "appearance of influence or access does not cause the electorate to lose faith in our democracy."   No. 08-205, at 32.  "Caperton held that a judge was required to recuse himself 'when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case

13

1    was pending or imminent.'" Id. at 33.  Thus, "Caperton's holding was limited to the rule that the judge

2    must be recused, not that the litigant's political speech could be banned."  Id.

3          In sum, the Court does not accept the City's assertion that contributions to committees making

4    only independent expenditure can corrupt or create the appearance of corruption, at least in the absence

5    of convincing evidence.  The Court declines to speculate whether it is possible for the City to make

6    such a showing.  At this early stage in the proceedings, the City has not done so, and therefore

7    Plaintiffs have demonstrated a likelihood of success as to Section 27.2936(b).  Based on the above

8    analysis, Plaintiffs have also demonstrated a likelihood of success on the merits as to the $500 limit in

9    Section 27.2935(a) on contributions to committees making only independent expenditures.

10         **4.        Section 27.2938, Restrictions on Time Period of Contributions**

11         Section 27.2938(a) provides: "It is unlawful for any candidate or controlled committee seeking

12   elective City office to solicit or accept contributions prior to the twelve months preceding the primary

13   election for the office sought."[12]  ECCO § 27.2938(a).  Plaintiffs argue this provision is

14   unconstitutional because it is a complete ban on contributions outside the 12-month window.  Plaintiffs

15   also contend that the Ethics Commission's interpretation of the provision as prohibiting candidates

16   from spending their own money "to pay for goods or services in connection with seeking . . . elective

17   City office" outside the 12-month window is unconstitutional.  (Compl., Exhibit 3.)  The City does not

18   dispute that this is the Ethics Commission's enforcement position.  The Court addresses each argument

19   in turn.

20         **a.        12-Month Limit on Soliciting or Accepting Contributions**

21         Because the 12-month window is a restriction on contributions, it must be "closely drawn" to a

22   "sufficiently important interest."  Plaintiffs do not dispute that the City has a sufficiently important

23   interest.  There is no question that limits on direct contributions to candidates serve the government's

24   valid interest in preventing "the actuality and appearance of corruption resulting from large individual

25   financial contributions."  See Buckley, 424 U.S. at 26.  Rather, Plaintiffs argue that a complete ban on

26

27         _____
           [12] A "controlled committee" is defined as "any committee controlled directly or indirectly by a candidate or acts

28   jointly with a candidate or controlled committee in connection with the making of expenditures."  ECCO § 27.2903.

soliciting and accepting contributions outside the 12-month window is not "closely drawn" to that interest.

While temporal limits do burden free speech and association, there is no evidence that the City's limit is more than a minimal burden. The Supreme Court in <u>Buckley</u> explained that contribution limitations are "only a marginal restriction upon the contributor's ability to engage in free communication." 424 U.S. at 20. In <u>Buckley</u>, the Court held that the $1,000 contribution limit was justified where the overall effect was "merely to require candidates and political committees to raise funds from a greater number of persons and to compel people who would otherwise contribute amounts greater than the statutory limits to expend such funds on direct political expression, rather than to reduce the total amount of money potentially available to promote political expression." <u>Id.</u> at 21-22.

Here, the effect of limiting the time period for soliciting and accepting contributions to a 12-month window is similar. <u>See</u> <u>Gable v. Patton</u>, 142 F.3d 940, 951 (6th Cir. 1998) (upholding a ban on contributions during the 28 days prior to the election). The 12-month window furthers the government's anticorruption interest by channeling contributions to a time period "during which the risk of an actual quid pro quo or the appearance of one runs highest."[13] <u>See</u> <u>North Carolina Right to Life, Inc. v. Bartlett</u>, 168 F.3d 705, 716 (4th Cir. 1999) (upholding a ban on lobbyist contributions during legislative session). The effect of the limit is that candidates will merely be "forced to rearrange their fundraising" by concentrating it in the 12-month window. <u>See</u> <u>Gable</u>, 142 F.3d at 951. The City's limit does "nothing more than place a temporary hold on [Plaintiffs'] ability to contribute." <u>See</u> <u>Bartlett</u>, 168 F.3d at 715.

---

[13] The City also argues that the limit is consistent with <u>Buckley</u>, which recognized "reasonable time, place and manner" limitations on contributions. However, as Plaintiffs point out, this argument conflicts with the language of <u>Buckley</u> itself. <u>Buckley</u>, 424 U.S. at 17-18 ("Nor can the Act's contribution and expenditure limitations be sustained . . . by reference to the constitutional principles reflected in" prior Supreme Court cases which "stand for the proposition that the government may adopt reasonable time, place, and manner regulations, which do not discriminate among speakers or ideas, in order to further an important governmental interest unrelated to the restriction of communication."); <u>see also</u> <u>Nixon v. Shrink Missouri Gov't PAC</u>, 528 U.S. 377, 386 (2000) (noting that the <u>Buckley</u> Court "explicitly rejected . . . the . . . standard applicable to merely time, place, and manner restrictions").

09cv2862

Plaintiffs argue that Plaintiff Thalheimer must start raising funds now to be a competitive candidate against an incumbent, and that the limit prevents candidates from being able to mount effective campaigns against incumbent officeholders.  However, Plaintiffs provide no evidence that the 12-month window prevents challengers from amassing the resources necessary to mount effective campaigns against incumbents.  See Buckley, 424 U.S. at 22.  In addition, the Buckley Court squarely rejected a similar argument that the $1,000 contribution limit in that case was unconstitutional because it made fundraising more difficult for challengers than for incumbents.  See Bartlett, 168 F.3d at 717 (citing Buckley, 424 U.S. at 30-31).  The Buckley Court found important the fact that the $1,000 limit, like the 12-month window in this case, was the same for challengers and incumbents alike.  See Bartlett, 168 F.3d at 717 (citing Buckley, 424 U.S. at 31).

The Court therefore accepts the City's assertion that the limit furthers its anticorruption interest. Accordingly, Plaintiffs have not demonstrated a likelihood of success on the merits of regarding this provision.

### b.     12-Month Limit on Candidates Using Their Own Money

Plaintiffs challenge the Ethics Commission's enforcement position that Section 27.2938(a) prohibits candidates from spending their own money in support of their candidacy prior to 12 months before the primary election.  The Court agrees that this interpretation is clearly unconstitutional under Supreme Court precedent.

The Ethics Commission impermissibly classifies a candidate's personal expenditures as contributions to him or herself.  The Supreme Court in Buckley explicitly rejected the argument that personal funds expended by the candidate on their own behalf were contributions rather than expenditures.  424 U.S. at 52-53 n.58 ("[U]nlike a person's contribution to a candidate, a candidate's expenditure of his personal funds directly facilitates his own political speech.").  In Buckley, the Court struck down a ceiling on personal expenditures by a candidate in furtherance of their own candidacy. Id. at 51-53; see also Davis v. Fed. Election Comm'n, 128 S.Ct. 2759, 2764 (2008) (striking down a law imposing, in essence, a penalty on any candidate who spent over a certain amount of money in personal expenditures).  The Court held that a "ceiling on personal expenditures by a candidate in furtherance of his own candidacy . . . clearly and directly interferes with constitutionally protected

freedoms." 424 U.S. at 53.  Candidates have the right "to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election." Id. at 52.  "Indeed, it is of particular importance that candidates have the unfettered opportunity to make their views known so that the electorate may intelligently evaluate the candidates' personal qualities and their positions on vital public issues before choosing among them on election day." Id. at 52-53.  The Court concluded that because personal expenditures do not raise the "core problem of avoiding undisclosed and undue influence," the interest in prevention of actual and apparent corruption "does not support the limitation on the candidate's expenditure of his own personal funds." Id.

Here, the Ethics Commission's enforcement position prohibiting candidates from spending their own money outside the 12-month window constitutes a restriction on candidates' personal expenditures.  The City concedes that "contributions to oneself" do not pose a risk of corruption, but argues that allowing only self-financed candidates to fund their campaigns before the 12-month window will increase the risk that competitors of self-financed candidates will attempt to circumvent contribution limitations by trying to raise money outside the 12-month window.  The City presents no evidence demonstrating this is a valid concern, and it is questionable that even if it were, it would supersede a candidate's right to the "unfettered opportunity" to advocate for their candidacy.

Accordingly, Plaintiffs have demonstrated a likelihood of success on the merits of regarding this provision.

**5.      Section 27.2950, Limit on Contributions from Non-Individuals & 27.2951, Prohibition on Contributions from Bank Accounts belonging to Non-Individuals**

Section 27.2950(a) provides: "It is unlawful for a candidate or controlled committee, or any treasurer thereof, or any other person acting on behalf of any candidate or controlled committee, to solicit or accept a contribution from any person other than an individual for the purpose of supporting or opposing a candidate for elective City office."[14]  ECCO § 27.2950(a).  Subsection (b) bars non-individuals from making such contributions, and subsection (c) bars committees supporting candidates

---

[14] A person other than an individual includes a "proprietorship, firm, partnership, joint venture, syndicate, business trust, company, corporation, association, committee, labor union, or any other organization or group of persons acting in concert." ECCO § 27.2903.

17

from accepting contributions from non-individuals.[15]  Id. § 27.2950(b)-(c).  A related provision,

Section 27.2951, provides: "For purposes of supporting or opposing a candidate seeking elective City

office . . . : (a) It is unlawful for any individual to make, or any committee to accept, a contribution

drawn against a checking account or credit card account unless such account belongs to one or more

individuals in their individual capacity."  Id. § 27.2951.

Plaintiffs make two separate arguments.  First, the provision is unconstitutional as applied to

political parties, and second, it is unconstitutional as applied to corporations and other organizational

entities.  The Court addresses each argument in turn.

### a.      Ban on Contributions from Political Parties

Because the provisions are contribution limits, they must be "closely drawn" to a "sufficiently

important interest."  The City argues that the limit on contributions from political parties serves an

anticorruption and anticircumvention interest.  Plaintiffs do not dispute that the City has a sufficiently

important interest in limiting large contributions to candidates from political parties, but argue that a

complete ban is not "closely drawn" to that interest.

The Supreme Court has recognized a sufficient anticorruption interest in preventing political

parties from acting as conduits for large donors wishing to gain influence over candidates.  Fed.

Election Comm'n v. Colorado Republican Fed. Campaign Comm., 533 U.S. 431, 456 (2001)

(Colorado II).  In Colorado II, the Supreme Court upheld limits on political party expenditures

coordinated with candidates.  Id. at 456.  The Court found adequate evidence that unlimited

coordinated spending by a party raised the risk of corruption and the appearance of correction due to

circumvention of valid contribution limits.  Id. at 444-65.

Then, in Randall, the Supreme Court struck down limits on the amounts individuals,

organizations, and political parties could contribute to campaigns of candidates for Vermont state

---

[15] ECCO §§ 27.2950(b) ("It is unlawful for a person other than an individual to make a contribution to a candidate or controlled committee for the purpose of supporting or opposing a candidate for elective City office."); 27.2950(c) ("It is unlawful for any primarily formed recipient committee to solicit or accept from any person other than an individual, or for any person other than an individual to make, a contribution supporting or opposing a candidate for elective City office."). A "primarily formed recipient committee" is defined as "a person, entity, or organization that receives contributions totaling $1,000 or more during a calendar year to support or oppose a single candidate for a City election or a single City measure.  This type of committee is not controlled by a candidate."  Id. § 27.2903.

office.  548 U.S. 230, 256 (2006).  As discussed previously, the Court has recognized there exists "some lower bound" to contribution limits.  Id. at 248.  The Randall Court based its conclusion that the Vermont law was too restrictive on five factors, taken together.[16]  One factor was that the law's "insistence that political parties abide by *exactly* the same low contribution limits that apply to other contributors threatens harm to a particularly important political right, the right to associate in a political party."  Id. at 256 (emphasis in original).  "[T]he Act would severely limit the ability of a party to assist its candidates' campaigns by engaging in coordinated spending on advertising, candidate events, voter lists, mass mailings, even yard signs."  Id. at 257.  It would also "severely inhibit collective political activity by preventing a political party from using contributions by small donors to provide meaningful assistance to any individual candidate."  Id. at 258.  The Court illustrated that if 6,000 individuals contributed $1 each to the State Democratic Party, the Act prohibited the party from giving $2,000 to each of its three candidates; rather, it could only give $200 to each.  Id.

The Court in Randall recognized that it had previously upheld limits on contributions from political parties to candidates in Colorado II, but noted that the limits at issue in Colorado II were "far less problematic" because the limits were significantly higher than the limits in Randall.  Id.  In addition, the limits in Colorado II were much higher than the limits on contributions from individuals, "thereby reflecting an effort by Congress to balance (1) the need to allow individuals to participate in the political process by contributing to political parties that help elect candidates with (2) the need to prevent the use of political parties 'to circumvent contribution limits that apply to individuals.'"  Id. at 258-59.  By contrast, the limits in Randall, "by placing identical limits upon contributions to candidates, whether made by an individual or a political party, gives to the former consideration *no weight at all*."  Id. at 259 (emphasis in original).  The Court concluded that the contribution limits were so low that they "would reduce the voice of political parties . . . to a whisper," and noted that Vermont did "not point to a legitimate statutory objective that might justify these special burdens."  Id. at 259,

---

[16] The Randall Court addressed Vermont's statutory scheme of contribution limits on individuals, organizations, and political parties as a whole, because it did "not believe it was possible to sever some of the Act's contribution limit provisions from others that might remain fully operative."  548 U.S. at 262.

261-62.  Although the Court acknowledged that campaign finance regulations impose certain burdens to some degree, it held that the limit in that case "nonetheless goes too far."  Id. at 262.

Here, as in Randall, the City's contribution limit threatens harm to the right to associate in a political party.  The City's limit does not permit parties in San Diego to make contributions to candidates at all, suggesting the City did not give proper "weight" to individuals' interest in participating in the political process by contributing to political parties.  See id. at 259.  In addition, the City's limit restricts the ability of parties in San Diego to assist in candidates' campaigns by engaging in coordinated spending, and prevents parties from using contributions by small donors to provide meaningful assistance to any individual candidate.  See id. at 258.  Using the example from Randall, if 6,000 individuals contributed $1 each to the Republican Party of San Diego, the City's limit would prohibit the party from contributing any of that money to a candidate, "thereby thwarting the aims of the 6,000 donors from making a meaningful contribution to [city] politics by giving a small amount of money to the party they support."  Id.

The City argues that San Diego holds nonpartisan elections, unlike the federal elections at issue in Randall.  However, it is unclear how this fact diminishes the serious effect of the contribution limit on the right to associate in a political party.  Indeed, if the City is arguing that there is a larger disconnect between parties and candidates in San Diego, this argument would cut against the City's argument that parties serve a special danger of corruption when they act as conduits for large donors wishing to gain influence over candidates supported by the parties.  The City also argues that the contribution limit does not prevent parties from making independent expenditures (raised from individuals subject to the $500 contribution limit) and engaging in other party-building and candidate support activities.  However, this does not address the complete inability of parties to assist candidates they support by engaging in coordinated spending.  See id. at 257.

With regards to Sections 27.2950 and 27.2951, Plaintiffs have demonstrated that they are likely to prevail on their argument that a complete prohibition on political party contributions is not "closely drawn" to the City's interest.  In addition, based on this analysis, Plaintiffs have demonstrated a likelihood of success with regards to Section 27.2936(b), to the extent it prohibits committees from using contributions from political parties to support or oppose a candidate.

### b.  Ban on contributions from organizations

Plaintiffs argue that Sections 27.2950 and 27.2951 are unconstitutional because they prohibit candidates from soliciting and accepting contributions from corporations and other organizational entities.[17]  These contribution limits must be "closely drawn" to a "sufficiently important interest." Plaintiffs do not dispute that the City has a valid anticorruption interest, but argue that in light of Citizens United, a complete ban cannot be said to be "closely drawn" to that interest.

"At least since the latter part of the 19th century, the laws of some States and of the United States imposed a ban on corporate direct contributions to candidates."  Citizens United, No. 08-205, at 24.  In 2003, the Supreme Court in Federal Election Commission v. Beaumont upheld a federal statute barring corporate contributions to candidates.  539 U.S. 146, 159-60 (2003).   Most recently, the Supreme Court in Citizens United struck down a federal statute barring independent corporate expenditures.  Id.  As the City points out, the Court in Citizens United explicitly did not address the issue of contribution limits.  Id. at 32 ("Citizens United has not made direct contributions to candidates, and it has not suggested that the Court should reconsider whether contribution limits should be subjected to rigorous First Amendment scrutiny.").  The Court reiterated that "contribution limits, . . . unlike limits on independent expenditures, have been an accepted means to prevent *quid pro quo* corruption."  Id.  While Citizens United did not overrule Beaumont, it is unclear to what extent the Court's reasoning affects the rationale for upholding limits on contributions from corporations and other organizational entities.

In Beaumont, the Court relied on Austin v. Michigan Chamber of Commerce, 494 U.S. 652 (1990) (upholding a restriction on corporate independent expenditures) for the proposition that corporations benefit from significant "state-created advantages" that permit them to use "resources amassed in the economic marketplace" to obtain an "unfair advantage."  539 U.S. at 160.  However, in Citizens United, the Court overruled Austin and held that the government may not suppress political

---

[17]The Supreme Court issued its decision in Citizens United after the City filed its opposition, and before Plaintiffs' reply.  Originally, Plaintiffs omitted from their motion any argument regarding corporations, instead focusing on contributions to other organizational entities.  In light of Citizens United, Plaintiffs argue in their reply that the prohibition is invalid as applied to corporations as well.  The City addressed this argument in its reply to the ACLU's amicus brief and at oral argument.

speech on the basis of the speaker's corporate identity.[18]  No. 08-205, at 26-31.  The Court rejected the "antidistortion interest" recognized in <u>Austin</u> in preventing "the corrosive and distorting effects of immense aggregations of wealth that are accumulated with the help of the corporate form and that have little or no correlation to the public's support for the corporation's political ideas."  <u>Id.</u> at 26.  Because <u>Citizens United</u> overruled <u>Austin</u>, to the extent <u>Beaumont</u> relied on the reasoning in <u>Austin</u>, that reasoning is no longer persuasive.

In upholding the corporate contribution limit, the <u>Beaumont</u> Court also recognized an interest in restricting the influence of political war chests funneled through the corporate form, relying on <u>Federal Election Commission v. National Right to Work Committee</u>, 459 U.S. 197 (1982) (<u>NRWC</u>). 539 U.S. at 160.  In <u>NRWC</u>, the Court held that the government had a sufficiently important interest in ensuring that "substantial aggregations of wealth amassed by the special advantages which go with the corporate form of organization should not be converted into political 'war chests' which could be used to incur political debts from legislators."  459 U.S. at 207.  In <u>Citizens United</u>, the Court declined to address the reasoning in <u>NRWC</u>, only noting that <u>NRWC</u> had "little relevance" because that case involved contribution limits, and not limits on independent expenditures.  No. 08-205 at 32 ("<u>NRWC</u> decided no more than that a restriction on a corporation's ability to solicit funds for its segregated PAC, which made direct contributions to candidates, did not violate the First Amendment.").

Finally, the <u>Beaumont</u> Court also recognized a separate anticircumvention interest for limiting corporate contributions.  "[R]estricting contributions by various organizations hedges against their use as conduits for 'circumvention of [valid] contribution limits.'"  539 U.S. at 155 (citing <u>Colorado II</u>, 533 U.S. at 456, 456 n.18 ("[A]ll Members of the Court agree that circumvention is a valid theory of corruption.")).  "To the degree that a corporation could contribute to political candidates, the individuals 'who created it, who own it, or whom it employs,' could exceed the bounds imposed on their own contributions by diverting money through the corporation."  539 U.S. at 155 (internal citations omitted).  The Court reasoned that corporations, including nonprofit advocacy corporations,

---

[18] The Court also overruled the part of <u>McConnell</u> that upheld restrictions on independent corporate expenditures, relying on the antidistortion interest recognized in <u>Austin</u>.

are "susceptible . . . to misuse as conduits for circumventing the contribution limits imposed on individuals."  539 U.S. at 160.  Citizens United did not address this rationale.

Here, Plaintiffs argue that the limit is unconstitutional because the City cannot ban speech based on the identity of the speaker as a corporation or other organizational entity.[19]  The City, however, asserts that it does not rely on the antidistortion interest rejected in Citizens United; rather, the limit furthers an anticorruption interest by preventing individuals from circumventing contribution limits with the use of sham organizations.  Because the Supreme Court in Beaumont relied on the anticircumvention interest in upholding a corporate contribution limit, and the validity of that rationale was not affected by Citizens United, this Court accepts the City's assertion that the limit furthers this interest.  In declining to extend the rationale of Citizens United to contribution limits, the Court finds significant "the careful line that Buckley drew to distinguish limits on contributions to candidates from limits on independent expenditures on speech."  See No. 08-205 at 42 (Roberts, C.J., concurring). "Judicial deference is particularly warranted where, as here, we deal with a congressional judgment that has remained essentially unchanged throughout a century of 'careful legislative adjustment.'" Beaumont, 539 U.S. at 162 n.9 (citing NRWC, 459 U.S. at 209).  Finally, the City's limit is not, as Plaintiffs argue, an "outright ban on corporate speech."  "A ban on direct corporate contributions leaves individual members of corporations free to make their own contributions, and deprives the public of little or no material information." Beaumont, 539 U.S. at 162 n.8.

Therefore, Plaintiffs have not demonstrated a likelihood of success on the merits with regards to Sections 27.2950 and 27.2951, as it relates to non-individuals other than political parties.

**B.      Likelihood of Irreparable Harm**

A plaintiff seeking preliminary relief must demonstrate that "irreparable injury is *likely* in the absence of an injunction."  Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 375 (2008) (emphasis in original).  This requires a plaintiff to demonstrate more than the "possibility" of irreparable harm.  Id.  "[T]he loss of First Amendment freedoms, for even minimal periods of time,

---

[19] Plaintiffs argued in their original motion (before Citizens United) that limits on contributions from organizational entities other than corporations were unconstitutional because most of these entities do not have the "corporate advantages" recognized in Austin that would justify restrictions on their contributions.  Plaintiffs did not argue this in their reply.

23

1   unquestionably constitutes irreparable injury." Yahoo! Inc. v. La Ligue Contre Le Racisme Et

2   L'Antisemitisme, 433 F.3d 1199, 1234 (9th Cir. 2006) (quoting Elrod v. Burns, 427 U.S. 347, 373

3   (1976)).

4         Here, the alleged injury to Plaintiffs is interference with their First Amendment rights.

5   Plaintiffs' Verified Complaint alleges each of the Plaintiffs would contribute, solicit, or spend money

6   now if the City's laws did not prevent them.  The City argues that the alleged harm is speculative

7   because Plaintiff Thalheimer alleges he is only "considering" running for elected office.  However,

8   Plaintiff Thalheimer alleges he has created a committee and currently wants to announce his potential

9   candidacy, begin soliciting contributions, and use his own money to begin advertising his potential

10  candidacy.  (Compl. ¶¶ 61-66.)

11        Because Plaintiffs have demonstrated a likelihood of success on the merits with respect to

12  certain ECCO provisions, Plaintiffs have demonstrated a likelihood of irreparable harm if enforcement

13  of these provisions is not enjoined.

**C.    Public Interest**

14        A plaintiff seeking injunctive relief must demonstrate that an injunction is in the public interest.

15  Winter, 129 S.Ct. at 374.  Plaintiffs bear the initial burden.  Stormans, Inc. v. Selecky, 586 F.3d 1109,

16  1139 (9th Cir. 2009) (citing Winter, 129 S.Ct. at 378).  The Ninth Circuit has "consistently recognized

17  the 'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the

18  potentially unconstitutional regulations . . . would infringe not only the free expression interests of

19  [plaintiffs], but also the interests of other people' subjected to the same restrictions." Klein v. City of

20  San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009) (quoting Sammartano v. First Judicial District

21  Court, in & for County of Carson City, 303 F.3d 959, 974 (9th Cir. 2002)).  However, the public

22  interest in maintaining a free exchange of ideas can be overcome by a "strong showing of other

23  competing public interests." Id. at 975.

24        In this case, as Plaintiffs argue, there is a significant public interest in upholding the rights of

25  free speech and association.  On the other hand, the City argues that a preliminary injunction is against

26  the public interest because it would reach beyond the parties and affect the campaign finance rules for

27  everyone in San Diego just prior to the election season.  The City contends that the current rules ensure

28

24

1   fairness, honesty, and integrity in the electoral process, and changing the rules would undermine

2   confidence in the government.  However, because Plaintiffs have demonstrated a likelihood of success

3   on the merits in invalidating certain of the City's campaign finance laws on First Amendment grounds,

4   the City's interest in preserving these limits does not overcome the public interest in upholding First

5   Amendment rights.  Accordingly, Plaintiff has met its burden of demonstrating that an injunction is in

6   the public interest.

7   **D.      Balance of Hardships**

8          In order to obtain injunctive relief, a plaintiff must establish that "the balance of equities tips in

9   [their] favor."  Winter, 129 S.Ct. at 374.   The district court "must balance the competing claims of

10  injury and must consider the effect on each party of the granting or withholding of the requested

11  relief."  Id. at 376 (quoting Amoco Prod. Co. v. Village of Gambell, Alaska, 480 U.S. 531, 542

12  (1987)).  "In exercising their sound discretion, courts of equity should pay particular regard for the

13  public consequences in employing the extraordinary remedy of injunction."  Winter, 129 S.Ct. at 376-

14  77 (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312(1982)).  Ninth Circuit case law

15  "clearly favors granting preliminary injunctions to a plaintiff . . . who is likely to succeed on the merits

16  of his First Amendment claim."  Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009).

17         Here, the Court must weigh any harm likely to be suffered by the City if the injunction is

18  granted against the injury that will likely befall the Plaintiffs if it is not.  Plaintiffs have demonstrated

19  they are likely to suffer irreparable harm in the form of interference with their First Amendment rights

20  if certain provisions are not enjoined.  Plaintiff has also demonstrated it is in the public interest to

21  prevent violation of Plaintiffs' constitutional rights.  On the other hand, the City argues that a

22  preliminary injunction would disrupt the current campaign finance system before an election. [20]  Upon

23  weighing the parties' competing claims of injury, the balance of hardships tips in favor of enjoining

24  _____

      [20] The City argues incorrectly that requests for preliminary injunctive relief that alter the status quo are subject to a
25  heavier burden of persuasion, citing to O Centro Espirita Beneficiente Uniao Do Vegetal, 389 F.3d 973, 975 (10th Cir.
    2004).  Unlike the Tenth Circuit, the Ninth Circuit does not apply a different standard for "specifically disfavored
26  preliminary injunctions."  The Court also rejects the City's contention that in "balancing the hardships of the public interest
    against a private interest, the public interest should receive greater weight."  The City relies on Federal Trade Commission
27  v. Affordable Media, LLC, a case involving a preliminary injunction obtained under the Federal Trade Commission Act,
    which "places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard."
28  See 179 F.3d 1228, 1233, 1236 (9th Cir. 1999).

enforcement of the provisions which Plaintiffs have demonstrated a likelihood of success in invalidating.  With regard to the remaining provisions which Plaintiffs have not demonstrated a likelihood of success in invalidating, the balance of hardships tips in favor of denying the injunctive relief.

### CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for a preliminary injunction, and ORDERS the following:

(1)  The City is preliminarily enjoined from taking any action to enforce Section 27.2936(b), which requires that money spent by committees to support or oppose a candidate must be attributable to contributions from individuals (not over the $500 limit).

(2) The City is preliminarily enjoined from taking any action to enforce Section 27.2935(a), to the extent it imposes a $500 limit on contributions to **committees making only independent expenditures**.

(3) The Court declines to enjoin Section 27.2938, which prohibits candidates from soliciting, accepting, and spending contributions more than 12 months before the primary election. However, the City is preliminarily enjoined from taking any action regarding the Ethics Commission's enforcement position that Section 27.2938 prohibits **candidates from using their own money** in furtherance of their campaigns more than 12 months before the primary election.

(4) The City is preliminarily enjoined from enforcing Section 27.2950, to the extent it prohibits candidates from soliciting and accepting any contribution from **political parties**.  The Court stays the preliminary injunction as it applies to this provision until further order of the Court, so as to allow the City time to provide an alternative limit on the contributions.  The Court declines to enjoin Section 27.2950, to the extent it prohibits candidates from soliciting and accepting contributions from non-individuals other than political parties.

(5) The City is preliminarily enjoined from enforcing Section 27.2951, to the extent it prohibits candidates from accepting contributions from an account belonging to a **political party**.  The

1  Court declines to enjoin Section 27.2951, to the extent it prohibits candidates from accepting

2  contributions from an account belonging to a non-individual other than a political party.

3 (6) The preliminary injunction shall remain in full force and effect until further order of the Court.

4 (7) Because the City has not demonstrated a risk of monetary loss from the issuance of a

5  preliminary injunction, no bond will be required.

6

7  **IT IS SO ORDERED.**

8

**DATED:  February 16, 2010.**

9           **IRMA E. GONZÁLEZ, Chief Judge**

10           **United States District Court**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Notice of Cross Appeal Notification Form

**To:**   Clerk, U.S. Court of Appeals                     **Date:** 3/22/2010
**From:** U.S. District Court, Southern District of California
**Subject:** New Appeals Case Information & Docket Fee Notification

## Case Information

Case Title:     PHIL THALHEIMER; ASSOCIATED BUILDERS & CONTRACTORS PAC,
sponsored by Associated Builders & Contractors, Inc. San Diego Chapter; LINCOLN
CLUB OF SAN DIEGO COUNTY; REPUBLICAN PARTY OF SAN DIEGO; JOHN
NIENSTEDT, SR. v. CITY OF SAN DIEGO

U.S.D.C. No.:   09-cv-02862-IEG -WMC          U.S.D.C. Judge:   Irma E. Gonzalez

Complaint/Indictment/Petition Filed:   Complaint

Appealed Order Entered:   2/16/2010

Notice of Cross Appeal Filed:   3/19/2010 (opposing party's Notice of Appeal filed 3/5/2010)

Court Reporter:   Frank Rangus

COA Status:   ☐ Granted in full/part (appeal only)          ☐ Denied (send clerk's file)

## Docket Fee Notification

Docket Fee:   ☒ Paid          ☐ Not Paid          ☐ No Fee Required

USA/GOVT. APPEAL:   ☐ Yes   ☒ No

Date F/P granted (Show Date and Attach Copy of Order): _____

Was F/P Status Revoked?   ☐ Yes          ☐ No

Companion Case(s): (Please list consolidated cases, if applicable) _____

## Counsel Information

**Cross-Appellant Counsel:**                 **Cross-Appellee Counsel:**

James Bopp , Jr.                              Dick A Semerdjian
Joseph E. LaRue                              Kristen T. Dalessio
BOPP COLESON & BOSTROM                       SCHWARTZ SEMERDJIAN HAILE
1 S. Sixth Street                            BALLARD AND CAULEY
Terra Haute, IN 47807-3510                   101 West Broadway, Suite 810
(812) 232-2434                               San Diego, CA 92101
                                             (619) 236-8821

Gary D Leasure                               Richard L. Hasen
LAW OFFICES OF GARY D LEASURE                LOYOLA LAW SCHOOL
12625 High BLuff Drive, Suite 103            919 S. Albany Street
San Diego, CA 92130                          Los Angeles, CA 90015
(858) 720-1992                               (213) 736-1466

Counsel Status:   [x] Retained      [ ] Appointed      [ ] Pro Se
Appointed
(Attach copy of order/minutes)

**SERVICE LIST**

Counsel for Appellant(s) and Appellee(s), as listed on the previous page, have been sent copies of the following items:

| x | Transmittal to U.S.C.A. (Appellant and Appellee) |
|---|---|
| x | Case Information/Docketing Fee Notification Form (Appellant and Appellee) |
| x | Notice of Cross Appeal (Appellant, Appellee, U.S. District Judge) |
|   | Docket Entries (Appellant and Appellee) |
| x | Transcript Designation and Ordering Form (Appellant Only, mailed separately) |
|   | Magistrate Judge's Report and Recommendation |
|   | COA Order |
|   | F/P Order |
|   | Minute Order |
| x | Other: ORDER Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction, entered 2/16/2010 |

Form Completed And Documents Served By U.S. District Court Deputy Clerk:

A. Rowland                                    s/ A. Rowland

Deputy's Name                                 Deputy's Signature

# UNITED STATES DISTRICT COURT
Southern District Of California
Office Of The Clerk
880 Front Street, Room 4290
San Diego, California 92101-8900
Phone: (619) 557-5600
Fax: (619) 702-9900

W. Samuel Hamrick, Jr.
Clerk of Court

To:   Clerk, U.S. Court of Appeals
      P.O. Box 193939
      San Francisco, CA 94119-3939
      (via electronic transmission)

**Re:   USCA No:**
      **USDC No:        09-cv-02862-IEG -WMC**
      **Thalheimer et al v. City of San Diego et al**

Clerk, U.S. Court of Appeals, enclosed herewith you will please find:

| | | | | | | |
|---|---|---|---|---|---|---|
| x | Notice of Cross Appeal | | | | | |
| x | Case Information/Docket Fee Payment Notification Form | | | | | |
| | Original Clerk's Record in | | | set(s) of | | volume(s) |
| | Reporter's transcripts in | | | set(s) of | | volume(s) |
| | Lodgments in | | envelope(s) | | box(es) | folder(s) |
| | Judgment Order | | | | | |
| | Magistrate Judge's Report and Recommendation | | | | | |
| | F/P Order | | | | | |
| x | Representation Statement and Civil Appeals Docketing Statement, to be transmitted to US Court of Appeals via U.S. mail | | | | | |
| x | ORDER Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction, entered 2/16/2010 | | | | | |
| x | Please acknowledge receipt | | | | | |

Sincerely yours,

W. Samuel Hamrick, Jr.
Clerk of Court

s/ A. Rowland

Date:  3/22/2010             By:_____
                             A. Rowland, **Deputy**