# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Phil Thalheimer; Associated Builders & Contractors PAC sponsored by Associated Builders & Contractors, Inc. San Diego Chapter; Lincoln Club of San Diego County; Republican Party of San Diego; and John Nienstedt, Sr.,<br><br>                                    Plaintiffs,<br><br>    vs.<br><br>City of San Diego; City of San Diego Ethics Commissioners Richard M. Valdez, Chair, W. Lee Biddle, Guillermo ("Gil") Cabrera, Clyde Fuller, Dorothy Leonard, and Larry S. Westfall, all sued in their official capacity; The Honorable Jerry Sanders, Mayor of San Diego, sued in his official capacity; Hey, oldsmith, City Attorney for the City of San Diego, sued in his official capacity; and Elizabeth Maland, City Clerk of San Diego, sued in her official capacity,<br><br>                                    Defendants. | CASE NO. 09-CV-2862-IEG (WMc)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR IMMEDIATE STAY**<br><br>**[Doc. No. 50]** |

Presently before the Court is Defendant City of San Diego's ("the City") motion for an immediate stay of a preliminary injunction pending appeal, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. (Doc. No. 50.) The City moves to stay enforcement of the portions of the Court's February 16, 2010 and February 19, 2010 Orders relating to the City's limit on campaign contributions to independent expenditure committees. (Doc. Nos. 42, 46.)

Plaintiffs filed an opposition, and the City filed a reply. The motion is suitable for disposition without oral argument pursuant to Local Civil Rule 7.1(d)(1). For the reasons stated herein, the Court denies the City's motion for an immediate stay.

## BACKGROUND

Plaintiffs Phil Thalheimer, Associated Builders & Contractors, Inc. San Diego Chapter, Lincoln Club of San Diego County, San Diego County Republican Party, and John Nienstedt ("Plaintiffs") challenge the constitutionality of San Diego's campaign finance laws on First Amendment grounds. Plaintiffs' Verified Complaint names as defendants the City of San Diego ("the City") and several government officials in their official capacity.[1] (Doc. No. 1.)

Plaintiffs challenge five provisions of the San Diego Municipal Election Campaign Control Ordinance ("ECCO"), arguing that they are unconstitutional, both facially and as applied to Plaintiffs. Most relevant to the instant motion to stay is Section 27.2936(b), which provides: "It is unlawful for any general purpose recipient committee to use a contribution for the purpose of supporting or opposing a candidate unless the contribution is attributable to an individual in an amount that does not exceed $500 per candidate per election." ECCO § 27.2936(b).

On December 21, 2009, Plaintiffs filed a motion seeking a preliminary injunction enjoining enforcement of the five provisions. (Doc. No. 3.) On February 16, 2010, following briefing and oral argument, the Court issued a written order granting in part and denying in part the motion. (Doc. No. 43.) The Court enjoined enforcement of Section 27.2936(b), among other provisions, finding that Plaintiffs had demonstrated a likelihood of success on the merits. (Order at 9-14, 26.) The Court also enjoined enforcement of Section 27.2935(a), to the extent it imposes a $500 limit on contributions to committees making only independent expenditures. (Order at 26.)

On February 19, 2010, in response to the City's ex parte motion for clarification, the Court issued an order clarifying that the injunction pertaining to the enforcement of Section 27.2936(b), also encompasses contributions from *non-individual entities*, such as corporations, to independent expenditure committees. (Doc. No. 46.) In addition, the Court granted in part Plaintiffs' request to enjoin Section 27.2951, to the extent that it prohibits independent expenditure committees from

---

[1] On January 8, 2010, the Court granted the parties' joint motion to dismiss all defendants except the City of San Diego. Pursuant to the joint motion, these defendants are bound by the Court's rulings with respect to the matters at issue.

accepting contributions drawn against a checking account or credit card account belonging to a non-individual entity. (Doc. No. 46.)

Subsequently, the City appealed the February 16, 2010 and the February 19, 2010 Orders. (Doc. Nos. 48, 49.) On March 8, 2010, the City filed the instant motion for immediate stay of enforcement of the portions of the Orders that deal with Sections 27.2936(b), 27.2935(a), and 27.2951, only as they relate to contributions to independent expenditure committees, until resolution of the appeal. (Doc. No. 50.) The City requests a stay remaining in effect pending resolution of the appeal. In the alternative, the City requests a short stay lasting long enough for the Ninth Circuit Court of Appeals to rule upon the City's emergency application for a stay.[2]

The Court granted in part the City's ex parte motion to shorten time for hearing on the motion for immediate stay and issued an expedited briefing schedule. (Doc. No. 56.)

## DISCUSSION

### I.   Legal Standard

Rule 62(c) of the Federal Rules of Civil Procedure provides: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."

The standard for granting a motion to stay is akin to the one used in deciding whether a preliminary injunction should be issued. Winter v. Nat. Res. Def. Council, Inc., --- U.S. ---, 129 S.Ct. 365, 376 (2008). The Court may issue a stay upon consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 129 S.Ct. 1749, 1761 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). The first two factors are the most critical. Nken, 129 S.Ct. at 1761.

//

//

---

[2] The City has already filed a motion for stay with the Ninth Circuit. (Decl. of Dick A. Semerdijan in Supp. of Def.'s Reply to Pl.'s Opp'n to Stay)

**I.     Analysis**

   **A.     Success on the merits of the appeal**

In deciding whether to grant the stay, the Court considers whether the City has demonstrated a strong showing that it is likely to succeed on the merits of the appeal. "It is not enough that the chance of success on the merits be 'better than negligible.'" Nken, 129 S.Ct. at 1761 (quoting Sofinet v. INS, 188 F.3d 703, 707 (7th Cir. 1999). The court of appeals reviews the grant or denial of a preliminary injunction under an abuse of discretion standard. Ashcroft v. ACLU, 542 U.S. 656, 664 (2004) (citation omitted). The City argues that it is likely to succeed on appeal because the Court abused its discretion in three ways. The Court addresses each argument in turn.

   1.     Adequate factual development

The City argues that the Court abused its discretion by granting the preliminary injunction without allowing for adequate factual development as to the City's sufficiently important interest in limiting contributions to independent expenditure committees.[3]

In the February 16, 2010 Order ("the Order") granting the preliminary injunction, the Court concluded that Plaintiffs were "likely to succeed in demonstrating that the City's limit is not 'closely drawn' to a 'sufficiently important interest.'"[4] (Order at 9.) The Court began by stating the principle, as set forth by the Supreme Court in McConnell v. Federal Election Commission, 540 U.S. 93, 93 (2003), that the more novel or implausible the justification for a law, the more evidence is needed to satisfy the applicable level of scrutiny. (Order at 9.) After acknowledging that the issue is unsettled, the Court concluded, as did the Fourth Circuit in North Carolina Right to Life, Inc. v. Leake, 525 F.3d 274, 291, 293 (4th Cir. 2008) and District of Columbia Circuit in

---

[3] The City also argues that the Court abused its discretion by granting the preliminary injunction without allowing for adequate factual development as to the extent of the burden of the limits on Plaintiffs' First Amendment rights. However, the Court may grant a preliminary injunction on the basis of affidavits. Ross-Whitney Corp. v. Smith Kline & French Laboratories, 207 F.2d 190, 198 (9th Cir. 1953). Plaintiffs' Verified Complaint alleges that Plaintiffs are burdened by the restriction, because they would make independent expenditures attributable to contributions in amounts greater than $500 per individual and attributable to contributions from non-individual entities, if not prohibited by the City's laws. (Compl. ¶¶ 39-40, 46.)

[4] This statement from the Court's Order should make clear - although the City asserts in its reply that it is not clear - that the Court was applying the level of scrutiny applicable to contribution limits. See also Order at 5 ("Contribution limitations, on the other hand, are subject to a less rigorous standard of review – they must be 'closely drawn' to match a 'sufficiently important interest.'").

Emily's List v. Fed. Election Comm'n, 581 F.3d 1, 11 (D.C. Cir. 2009), that it is implausible that limiting contributions to committees that make only independent expenditures prevents corruption or the appearance of corruption.[5]  (Order at 10-11, 13.)  Independent expenditure committees by definition make expenditures independent of candidates, "rendering it unlikely that such expenditures would be made in exchange for 'improper commitments from the candidate.'" (Order at 11.)

The only evidence that the City submitted on the question of whether contributions to independent expenditure committees have the potential to corrupt was a declaration describing possible empirical testing of this question.  (Def.'s Opp'n to Mot. for Prelim. Inj. at 15, Kousser Decl. at ¶ 3.)  The City relied on the two district court cases - Speechnow.Org v. Federal Election Commission, 567 F. Supp. 2d 70, 78 (D.D.C. 2008) and Working Californians v. City of Los Angeles, Case No. CV-09-08327 (C.D. Cal. Nov. 24, 2009), in which the courts declined to enjoin limits on contributions to independent expenditure committees, but the Court did not find these cases persuasive. Accordingly, the Court did not accept the City's assertion, unsupported by any evidence, that it had a valid anticorruption interest justifying its contribution limit.  (Order at 14.) The Court declined to speculate whether it was possible for the City to make such a showing, only finding that it had not done so at that stage.  (Order at 14.)

Prior to the Court granting the preliminary injunction, the City had the opportunity to request time to conduct discovery and to present evidence at the preliminary injunction hearing. Contrary to the City's assertion, the Court was not required to wait until a full trial on the merits. (Reply at 3.)  The purpose of a preliminary injunction is to give temporary relief "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981).  The Court found that Plaintiffs had met their burden of demonstrating that the City's asserted anticorruption interest was likely invalid in the absence of evidence to the contrary.  Thus, the City was required, not to *prove* its interest, but to make some factual showing sufficient to convince the Court that Plaintiffs only had a possibility of success.  Although a factual dispute exists as to whether contributions to independent

---

[5] The only interest the Supreme Court has ever found sufficiently important to justify contribution limits is the interest in preventing corruption and appearance of corruption.  (Order at 5.)

expenditure committees have the potential to corrupt, the Court was not precluded from making a decision on the basis of the law and facts before it.[6]

The City argues that <u>Citizens for Clean Government v. City of San Diego</u>, 474 F.3d 647, 653 (9th Cir. 2007), stands for the proposition that it is an abuse of discretion to grant a preliminary injunction without allowing for adequate factual development. The Court disagrees with this interpretation. <u>Citizens for Clean Government</u> involved the denial of a permanent injunction of a campaign contribution limit, as applied to the signature-gathering phase of a recall election. <u>Id.</u> at 649. The Ninth Circuit held that the district court erred by deciding, "apparently as a matter of law," on the basis of hypotheticals and vague allusions to practical experience, that the government had a sufficient interest. <u>Id.</u> at 650. The Ninth Circuit remanded for further evidentiary development. <u>Id.</u> at 654. Contrary to the City's interpretation, the Ninth Circuit did not hold that a court is required to deny a preliminary injunction until an adequate factual record is developed. <u>Citizens for Clean Government</u> involved the denial of a permanent injunction, rather than a preliminary injunction. "[W]here a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy." <u>University of Texas</u>, 451 U.S. at 396. By contrast, where "a federal district court has granted a permanent injunction, the parties will already have had their trial on the merits." <u>Id.</u>

//

//

---

[6] The City also argues that the Order was inconsistent because the Court denied the preliminary injunction due to the inadequate factual record as to a different provision - the $500 limit on contributions from individuals to candidates. This was not inconsistent. As to the $500 limit, it was undisputed that the City had a valid interest in preventing corruption and appearance of corruption inherent in large contributions to candidates. (Order at 6.) As to the issue of whether the limit was "closely drawn" to that interest, the Court noted that the Supreme Court has held that a court starts with the premise that it has "no scalpel to probe" whether one limit might not serve as well as another, <u>Buckley v. Valeo</u>, 424 U.S. 1, 30 (1976), but that there may exist "danger signs" that a limit prevents effective campaign advocacy so as to be unconstitutionally low, <u>Randall v. Sorrell</u>, 548 U.S. 230, 249 (2006). (Order at 7.) Whether a limit is unconstitutionally low because it prevents candidates from amassing the resources necessary for effective campaign advocacy is a fact intensive inquiry. (Order at 7-8.) In that context, Plaintiffs were required to point to evidence of "danger signs" in order to demonstrate that the limit was likely not closely drawn, and the Court declined to grant a preliminary injunction absent a more fully developed factual record on that issue. By contrast, with respect to the limit on contributions to independent expenditure committees, the Court found that Plaintiffs had met their burden of demonstrating that the City likely did not have a valid interest.

### 2. Pending Ninth Circuit decision

The City argues that the Court abused its discretion by granting a preliminary injunction after the City alerted the Court to the fact that the same issue is pending before the Ninth Circuit in <u>Long Beach Area Chamber of Commerce et al. v. City of Long Beach</u>, Case. No. 07-55691. A decision in that case might cause disruption if the City must change its campaign finance rules again during the election season. However, it is always a possibility that an injunction will be reversed on appeal. The City cites no authority to support its contention that a court abuses its discretion when it does not stay proceedings pending determination of the same issue by a court of higher authority. Whether courts must stay proceedings is generally a matter of discretion. <u>See</u> <u>Clinton v. Jones</u>, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion [as to whether] to stay proceedings as an incident to its power to control its own docket.") Although the issue of limits on contributions to independent expenditure committees is complex and has not yet been considered by this Circuit, the Court cannot be certain when the Ninth Circuit will render a decision.[7] This Court made a decision based on the Court of Appeals and district court cases addressing the same issue, and based on relevant Supreme Court precedent.

### 3. The Court's decision as a matter of law

The City argues that the Court abused its discretion by incorrectly concluding as a matter of law that contribution limits to independent expenditure committees are unconstitutional.[8]

The City contends that the Court's reasoning underlying its finding that Plaintiffs were unlikely to succeed on the merits as to a different provision - the ban on contributions from non-individual entities to candidates[9] (Order at 23) - should equally apply to the limit on contributions to independent expenditure committees. These conclusions, however, are not logically

---

[7] The City argues that there is a distinct possibility that the Ninth Circuit will issue a decision soon, considering it has now received supplemental briefing on the effect of <u>Citizens United v. Fed. Election Commission</u>, No. 08-205, --- S.Ct. ----, 2010 WL 183856 (Jan. 21, 2010) on the case. (Reply at 6; Ex. B.)

[8] As an initial matter, the Court did not find that the limit was unconstitutional. The Court expressly declined to speculate whether it is possible for the City to prove it has a sufficient interest, only finding that it had not done so at the preliminary injunction stage. (Order at 14.)

[9] Section 27.2950(a) provides: "It is unlawful for a candidate or controlled committee, or any treasurer thereof, or any other person acting on behalf of any candidate or controlled committee, to solicit or accept a contribution from any person other than an individual for the purpose of supporting or opposing a candidate for elective City office." ECCO § 27.2950(a).

inconsistent. The limit on non-individual entity contributions to *candidates* does not involve the same issue as the limit on contributions to *independent expenditure committees*, namely, whether contributions to committees that make only independent expenditures have the potential to corrupt or create the appearance of corruption. (Order at 10-14.) It is undisputed that the government has a sufficient anticorruption interest in limiting contributions to *candidates*.

The City also argues that, although the Court noted in its Order that the Supreme Court's recent decision in Citizens United v. Fed. Election Commission, No. 08-205, --- S.Ct. ----, 2010 WL 183856 (Jan. 21, 2010) did not expressly consider the constitutionality of contribution limits, the Court relied heavily upon the case in striking down limits on contributions to independent expenditure committees. To the extent the Court relied on the Supreme Court's statement in Citizens United that "independent expenditures . . . do not give rise to corruption or the appearance of corruption," this was not improper. (Order at 10.) The issue here is whether limiting the amount of money that committees can use to make independent expenditures furthers an anticorruption interest. The City relied on Speechnow.Org, in which the district court held that such limits further a valid anticorruption interest, in part based on its observation that the Supreme Court "left open the possibility that a time might come when . . . independent expenditures made by individuals to support candidates would raise an appearance of corruption." (Order at 12.) Citizens United appears to foreclose that argument.

In any event, this Court's citations to Citizens United provided further support for its decision, but were not the sole basis for its decision. This Court relied primarily on the District of Columbia Circuit and Fourth Circuit decisions in Emily's List and North Carolina Right to Life Inc., striking down limits on contributions to independent expenditure committees. (Order at 10-11, 13.) In addition, the Court distinguished McConnell v. Federal Election Commission, 540 U.S. 93 (2003), in which the Supreme Court upheld limits on soft money contributions to national political parties, as involving national political parties, rather than independent expenditure committees. (Order at 12-13.) The Court also relied on the Supreme Court's consistent treatment of independent expenditures, citing to Buckley v. Valeo, 424 U.S. 1, 45 (1976) and Colorado

Republican Fed. Campaign Comm. v. Fed. Election Comm'n, 518 U.S. 604, 618 (1996). (Order at 11.)

For the reasons above, the City has not met its burden of demonstrating that it is likely to succeed on appeal. To the extent reasonable minds could differ about the propriety of granting the preliminary injunction while the same issue is pending before the Ninth Circuit, the City has only shown a possibility of success.

**B.  Irreparable injury absent a stay**

In considering whether to grant the stay, the Court also considers whether the City will be irreparably injured absent a stay. "[S]imply showing some 'possibility of irreparable injury,' fails to satisfy the second factor." Nken, 129 S.Ct. at 1761. "A stay is not a matter of right, even if irreparable injury might otherwise result." Id. at 1760 (quoting Virginian Ry. Co. v. U.S., 272 U.S. 658, 672 (1926)).

The City argues that the City and its residents will suffer irreparable injury due to the confusion created by the Court's ruling in the middle of the election season. However, the City does not contend that there is confusion as to what conduct is enjoined, or that there is insufficient time to adequately inform candidates and the public about the changes. Although there is a possibility of confusion, the City has not demonstrated that confusion is likely. The Court's Orders are clear as to the scope of the injunction. (Order at 26; February 19, 2010 Order at 2.) In addition, the San Diego Ethics Commission is currently working to update its opinion letters, educational resources, and website. (Decl. of Stacey Fulhorst ("Fulhorst Decl."), ¶ 7).

The City also argues that changes to its laws may be necessary, which will require time for deliberation, public participation, and consideration by various entities. (Fulhorst Decl. ¶¶ 6, 8.) The City may have to enact new disclosure laws to deal with contributions made by U.S. subsidiaries of foreign corporations (Fulhorst Decl. ¶ 6), and may have to supplement the current ECCO disclosure provisions to enhance transparency associated with large contributions to independent expenditure committees (Fulhorst Decl. ¶¶ 6, 9).[10] The City has shown it is possible

---

[10] According to the City, at this time, except for "late" filings (made during the 16 days before the election), a state or county independent expenditure committee is not required to make any filings disclosing its contributors. Cal. Gov. Code §§ 84204, 84203.5, 84200.5, 84215. In addition, a voter seeking contributor information would have to physically go to the County of San Diego offices.

that the election will be flooded with large contributions to independent expenditure committees. However, the potential harm from lack of disclosure of these contributors does not tip the scales in favor of granting the stay, in light of the City's failure to demonstrate a likelihood of success on appeal.

Finally, the City argues that the Court correctly stayed the Order enjoining enforcement of the political party contribution limit, recognizing the likelihood of harm to the City, but that the Court should have done the same as to the limit on contributions to independent expenditure committees.[11] There is a key difference, however, between the two provisions. The Court *recognized the City's valid anticorruption interest* in limiting large contributions to candidates from political parties. (Order at 18.) The Court found that a complete ban on contributions from political parties was not "closely drawn" to that interest, but indicated that a limit which "gives proper 'weight' to individuals' interest in participating in the political process by contributing to political parties" could be appropriate. (Order at 20.) Because some limit other than a complete ban would be appropriate, the Court stayed the Order as to that provision until such time as the City could consider another monetary limit. By contrast, the Court found that the City likely *did not have a sufficiently important interest* justifying a limit on contributions to independent expenditure committees, because it is implausible that such contributions have the potential to corrupt or create the appearance of corruption (Order at 9-14.) Thus, any limit would likely not be appropriate. Accordingly, the Court did not stay the Order as to that provision.

**C.     Other factors**

The other considerations - substantial injury to the other parties interested in the proceeding and the public interest - do not weigh in favor of granting the stay.

Contrary to the City's assertion, just because there are other means available for Plaintiffs to engage in political speech, does not mean that Plaintiffs are not injured. "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199,

---

[11] The ban on contributions to candidates from non-individual entities under Section 27.2950(a) applies to political parties, as well as to corporations and other non-individual entities. ECCO § 27.2950(a). The Court enjoined enforcement of Section 27.2950(a) only as it applied to political parties, but stayed the Order to allow the City time to consider an alternative limit. (Order at 26.)

1234 (9th Cir. 2006) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).  In addition, the Ninth Circuit has "consistently recognized the 'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of [plaintiffs], but also the interests of other people' subjected to the same restrictions."  Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009) (quoting Sammartano v. First Judicial District Court, in & for County of Carson City, 303 F.3d 959, 974 (9th Cir. 2002)).

## CONCLUSION

An immediate stay is not appropriate.  The City has not demonstrated that it is likely to succeed on appeal, and has only demonstrated the possibility of irreparable harm.  In addition, the other considerations - substantial injury to the other parties interested in the proceeding and the public interest - weigh against granting the stay.  Accordingly, the Court DENIES the City's motion for an immediate stay.

**IT IS SO ORDERED.**

**DATED: March 23, 2010**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**