UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHIL THALHEIMER; ASSOCIATED BUILDERS & CONTRACTORS PAC SPONSORED BY ASSOCIATED BUILDERS & CONTRACTORS, INC. SAN DIEGO CHAPTER; LINCOLN CLUB OF SAN DIEGO; REPUBLICAN PARTY OF SAN DIEGO; and JOHN NIENSTEDT, SR., <br><br>               Plaintiffs, <br>   vs. <br><br> CITY OF SAN DIEGO, <br><br>               Defendant. | CASE NO: 09-CV-2862-IEG (BGS) <br><br> ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION <br><br> [Doc. No. 95] |

Presently before the Court is Plaintiffs' motion for Temporary Restraining Order and Preliminary Injunction. Defendant City of San Diego has filed an opposition, and Plaintiffs have filed a reply. For the reasons stated herein, the Court DENIES Plaintiffs' motion.

**BACKGROUND**

Plaintiffs Phil Thalheimer, Associated Builders & Contractors, Inc. San Diego Chapter, Lincoln Club of San Diego County, Republican Party of San Diego, and John Nienstedt ("Plaintiffs") bring this action challenging the constitutionality of San Diego's campaign finance laws on First Amendment grounds. Defendant is the City of San Diego ("the City").

On December 21, 2009, Plaintiffs filed a Verified Complaint and a motion for preliminary injunction, challenging five provisions of the San Diego Municipal Election Campaign Control Ordinance ("ECCO"). (Doc. Nos. 1 & 3.) On February 16, 2010, the Court granted in part and denied in part the motion for preliminary injunction. (Doc. No. 42.) In relevant part, the Court preliminarily enjoined enforcement of the City's complete prohibition on contributions from political parties to candidates. The Court, however, stayed the injunction in order to allow the City time to enact a limit.

On May 18, 2010, the Ninth Circuit Court of Appeals granted Plaintiffs' motion to lift the stay, allowing political parties in San Diego to make contributions to candidates. (Doc. No. 80.) On April 27, 2010, the San Diego City Council enacted ECCO § 27.2934, which places a $1,000 limit on political party contributions to candidates ("party contribution limit").[1] With leave of the Court, Plaintiffs filed a First Amended Verified Complaint, adding a new challenge to the $1,000 party contribution limit. (Doc. No. 94.) Plaintiffs also challenge ECCO § 27.2936(b), which Plaintiffs contend places source and amount restrictions on political party contributions to candidates ("attribution requirement"). Section 27.2936(b) provides in relevant part: "It is unlawful for any general purpose recipient committee to use a contribution for the purpose of supporting or opposing a candidate unless the contribution is attributable to an individual in an amount that does not exceed $500 per candidate per election."[2] Plaintiffs contend this provision has the effect of (1) limiting the amount of money individuals can give to political parties to support candidates to $500, and (2) limiting the amount which parties may then contribute to candidates.

On August 18, 2010, Plaintiffs filed this motion for temporary restraining order and preliminary injunction, seeking enjoinment of enforcement of Sections 27.2934 and 27.2936(b). Plaintiffs argue these provisions are unconstitutional because they burden the free speech and association rights of Plaintiff Republican Party of San Diego ("RPSD"). Plaintiffs allege RPSD

---

[1] ECCO § 27.2934 provides in relevant part: "It is unlawful for a political party committee to make, or for a candidate or controlled committee to solicit or accept, a contribution that would cause the total amount contributed by the political party committee to the candidate and the candidate's controlled committee to exceed $1,000 for any single City candidate election."

[2] In the February 16, 2010 Order, the Court enjoined enforcement of Section 27.2936(b) as it applied to contributions to independent expenditure committees.

currently wants to make contributions above the $1,000 limit to candidates for the November 2010 general election, and wants to do so in amounts not attributable to donations from individuals, in amounts not greater than $500 per individual.

## LEGAL STANDARD

In determining whether to grant a temporary restraining order or preliminary injunction, the Court applies the preliminary injunction standard articulated in Winter v. Natural Res. Def. Council, Inc., — U.S. —, 129 S.Ct. 365 (2008). A party seeking a preliminary injunction must demonstrate: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Id. at 374. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 375-76.

## DISCUSSION

**I.    Likelihood of Success on the Merits**

   **A.    Campaign Finance Laws and Level of Scrutiny**

The United States Supreme Court has held that campaign contribution limits "operate in an area of the most fundamental First Amendment activities." Buckley v. Valeo, 424 U.S. 1, 15 (1976). "A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." Id. at 19. "This is because virtually every means of communicating ideas in today's mass society requires the expenditure of money." Id.

Contribution limits are permissible under the First Amendment "as long as the Government demonstrates that the limits are 'closely drawn' to match a 'sufficiently important government interest.'" Randall v. Sorrell, 548 U.S. 230 (2006) (plurality opinion) (quoting Buckley, 424 U.S. at 25). This standard is sometimes referred to as "less rigorous" scrutiny. McConnell v. FEC, 540 U.S. 93, 136 (2003). The reason contribution limits are subject to less rigorous scrutiny is because they are "only a marginal restriction upon the contributor's ability to engage in free communication." Buckley, 424 U.S. at 20. "A contribution serves as a general expression of

support for the candidate and his views, but does not communicate the underlying basis for the support." Id. at 21. "The quantity of communication by the contributor does not increase perceptibly with the size of his contribution, since the expression rests solely on the undifferentiated, symbolic act of contributing." Id. Under this level of scrutiny, the Supreme Court and the Ninth Circuit have tended to uphold contribution limits. Randall, 548 U.S. at 247 (citing cases); Citizens for Clean Gov't v. City of San Diego, 474 F.3d 647, 651 (9th Cir. 2007) (citing cases).

The Supreme Court has concluded that "preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances." FEC v. Nat'l Conservative Political Action Comm., 470 U.S. 480, 496-97 (1985); see also Davis v. FEC, — U.S. —, 128 S.Ct. 2759, 2773 (2008). The Supreme Court has recognized that the government has a valid anticorruption interest in preventing circumvention of contribution limits. FEC v. Colo. Republican Fed. Campaign Comm., 533 U.S. 431, 456 (2001) (Colorado II) ("[A]ll Members of the Court agree that circumvention is a valid theory of corruption.").

### B.   ECCO § 27.2934, Party Contribution Limit

Plaintiffs seek enjoinment of enforcement of the City's $1,000 party contribution limit. This limit must be "closely drawn" to a "sufficiently important interest." See Buckley v. Valeo, 424 U.S. 1, 25 (1976). The City asserts an anticorruption interest in preventing political parties from acting as conduits for large donors wishing to gain influence over candidates, which is an interest the Supreme Court has held sufficiently important. See Colorado II, 533 U.S. at 456.

Plaintiffs contend the party contribution limit as not "closely drawn" to the City's anticorruption interest, arguing that it is too low and severe and restricts political parties' rights of speech and association. The Supreme Court has only twice considered the constitutionality of limits on political party contributions to candidates. In Colorado II, the Supreme Court upheld

federal limits on contributions from political parties to candidates.[1] Id. at 465. In Randall v. Sorrell, the Supreme Court struck down limits on the amounts individuals, organizations, and political parties could contribute to campaigns of candidates for Vermont state office.[2] 548 U.S. 230, 256 (2006). Randall is the only Supreme Court case striking down a contribution limit as not closely drawn to the government's interests.

In Randall, the Court stated that, following Buckley, it must determine whether the limit prevents candidates from "amassing the resources necessary for effective [campaign] advocacy." Id. at 248 (quoting Buckley, 424 U.S. at 21). The Court recognized, as Buckley acknowledged, that although it has "no scalpel to probe" whether one limit might not serve as well as another, there exists "some lower bound" at which the constitutional risks to the democratic electoral process become too great. 548 U.S. at 248. "[C]ontribution limits that are too low can also harm the electoral process by preventing challengers from mounting effective campaigns against incumbent officeholders, thereby reducing democratic accountability." Id. "[W]here there is strong indication in a particular case, *i.e.,* danger signs, that such risks exist," courts "must review the record independently and carefully" to assess the statute's "tailoring." Id. at 249.

The Court also found such danger signs were present because, as compared with contribution limits upheld by the Court in the past and with those in force in other States, Vermont's limits were "sufficiently low as to generate suspicion that they are not closely drawn." Id. Consequently, the Court examined the trial record to assess the limit's tailoring and considered five factors that, when "taken together," led it to conclude that Vermont's limits were not "closely drawn." The record suggested: (1) the limits would significantly restrict funding available for challengers, id. at 253-56; (2) the low limits threatened the right to associate in a political party, id.

---

[1] The federal limits in Colorado II were at least $67,560 in coordinated spending and $5,000 in direct cash contributions for U.S. Senate candidates, at least $33,780 in coordinated spending and $5,000 in direct cash contributions for U.S. House candidates. See Randall, 548 U.S. at 258 (citing Colorado II, 533 U.S. at 438-439, and n. 3, 442, n.7).

[2] Under Vermont law, political parties were subject to the same contribution limit individuals were subjected to, which ranged from $200 to $400, depending on the office. Randall, 548 U.S. at 238. The Randall Court addressed Vermont's statutory scheme of contribution limits on individuals, organizations, and political parties as a whole, because it did "not believe it was possible to sever some of the Act's contribution limit provisions from others that might remain fully operative." Id. at 262.

at 256-59; (3) the limits possibly impeded the effective use of volunteers, id. at 259-60; (4) the limits were not adjusted for inflation, id. at 261; and (5) there was no "special justification" to warrant these burdens, id. at 261.

With respect to the second factor, the Court explained that the Vermont law's "insistence that political parties abide by *exactly* the same low contribution limits that apply to other contributors threatens harm to a particularly important political right, the right to associate in a political party." Id. at 256 (emphasis in original). The Randall Court noted that the federal party contribution limits it previously upheld in Colorado II were much higher than the federal individual contribution limits, "thereby reflecting an effort by Congress to balance (1) the need to allow individuals to participate in the political process by contributing to political parties that help elect candidates with (2) the need to prevent the use of political parties 'to circumvent contribution limits that apply to individuals.'" Id. at 258-59. The Court also found that the Vermont law, in addition to having a negative effect on "amassing funds," would severely limit the ability of a party to assist its candidates' campaigns through engaging in coordinated spending. Id. at 257. The Vermont law would also "severely inhibit collective political activity by preventing a political party from using contributions by small donors to provide meaningful assistance to any individual candidate." Id. at 258. The Court concluded the Vermont limits were so low that they "would reduce the voice of political parties . . . to a whisper." Id. at 259.

Here, Plaintiffs and the City both rely heavily on Randall. This Court therefore is guided by the Randall Court's analysis. The first issue is whether "danger signs" exist that the party contribution limit is so low that it risks "harm[ing] the electoral process by preventing challengers from mounting effective campaigns against incumbent officeholders, thereby reducing democratic accountability." 548 U.S. at 248. Here, no such "danger signs" exist. The City's party contribution limit is $1,000 per election, or $2,000 per election cycle (i.e., per primary and general elections). As compared with contribution limits in force in other cities and states, the City's limit is not "sufficiently low as to generate suspicion that they are not closely drawn." See Randall, 548 U.S. at 249. The $1,000 limit is the same as party contribution limits in Los Angeles and San Antonio, and

double those in San Jose and San Francisco.[1]  (Declaration of Stephen Ross in Supp. of Def.'s Opp'n, Ex. A).  The $1,000 limit is also larger than the State of Florida's $500 limit and the State of Maine's $250 limit (for non-gubernatorial candidates).  (Declaration of John A. Schena in Supp. of Def.'s Opp'n ("Schena Decl."), Ex. B.)  As compared with the limit struck down in Randall, the City's $1,000 party contribution limit per election (or $2,000 per election cycle) is more than four times Vermont's $400 limit per election cycle.[2]  And unlike Vermont's limits, the City's $1,000 limit is indexed to inflation.

    Consideration of the five factors considered in Randall also does not suggest the party contribution limit is unconstitutionally low.  The second factor – whether the limit threatens the right to associate in a political party – is of most significance.  Here, the record does not suggest the limit has this effect.  Unlike the Vermont limits in Randall, the City's $1,000 party contribution limit is higher than the $500 individual contribution limit.  In addition, the transcript of the April 27, 2010 City Council Meeting shows that in enacting the party contribution limit, the City Council acknowledged the need to "balance the need of individuals to participate in the political process by contributing to political parties that help elect candidates with the need to prevent the use of political parties to circumvent contribution limits that apply to individuals." (Schena Decl., Ex. B at 6:16-7:7.)  Therefore, the Court cannot say the City failed to give these considerations any weight.  See Randall, 548 U.S. at 258-59.  Although Plaintiffs contend the $1,000 limit is so low that it prevents parties from providing meaningful assistance to candidates and prevents candidates from amassing funds, there is no evidence this is the case.  As the Supreme Court has instructed, "a court has no scalpel to probe, whether, say, a $2,000 ceiling might not serve as well as $1,000." Buckley v. Valeo, 424 U.S. 1, 35 (1976).  Although Randall recognizes there is a "lower bound," the Supreme Court in that case had the benefit of a full trial record, including expert witness testimony.

---

[1] Although true that these other cities' limits have not been challenged and upheld, the Randall Court compared the Vermont limits to other State limits without consideration of whether those State limits had been previously upheld.  See Randall, 548 U.S. at 250-51.

[2] The Court agrees with the City that comparison with the federal limits, which were upheld in Colorado II, is not of great significance in this case.  Colorado II involved limits on contributions to U.S. Senate candidates and U.S. House candidates, whereas this case involves municipal elections for City office.

Therefore, based on the limited evidence, the Court finds Plaintiffs have not demonstrated a likelihood of success on the merits regarding the party contribution limit.

### C.   ECCO § 27.2936(b), Attribution Requirement

Plaintiffs challenge Section 27.2936(b), which provides in relevant part: "It is unlawful for any general purpose recipient committee to use a contribution for the purpose of supporting or opposing a candidate unless the contribution is attributable to an individual in an amount that does not exceed $500 per candidate per election." Plaintiffs contend this provision, on its face, applies to political parties such as RPSD. Plaintiffs also point to a June 8, 2010 Memorandum from the San Diego Ethics Commission, Office of the Executive Director.  In this Memorandum, the Commission explains the effect of the Court's February 16, 2010 Order on Section 27.2936(b) as it applies to political parties:

> [T]he plain language of the order establishes that the ruling does not apply to committees that engage in other types of political advocacy. This means that the City may continue to enforce the restrictions set forth in section 27.2936 on political party committees that make contributions to City candidates or make payments for coordinated member communications that support or oppose City candidates.

(FAC, Ex. 6, at 2.)  The City, however, has clarified its position as to Section 27.2936(b).  The City asserts it is not enforcing Section 27.2936(b)'s source and amount restrictions as to political party contributions, as long as the $1,000 party contribution limit is in effect.  After oral argument, the City filed the Declaration of Stacey Fulhorst, the Executive Director of the Ethics Commission, in which she states:

> [T]he Ethics Commission will not be enforcing the provisions of San Diego Municipal Code section 27.2936(b) with regard to political party committees making contributions to City candidates for so long as the $1,000 limit on such contributions remains in effect.  In other words, a political party committee may make a $1,000 contribution to a City candidate without regard to the source and amount of the funds used to make that contribution.

(Declaration of Stacey Fulhorst in Supp. of Def.'s Response to Suppl. Authority ¶ 4.)  The City also filed the July 8, 2010 Minutes of the Ethics Commission Meeting, and July 12, 2010 Ethics Commission Update Regarding San Diego's Campaign Finance Laws.  (Def.'s Notice of Suppl. Authorities, Exs. A, B.)  These documents also support the City's position.

Because Section 27.2936(b) is not presently being enforced as to political party contributions, this issue is not ripe for adjudication. "Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). Ripeness involves an evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967), *overruled on other grounds by* Califano v. Sanders, 430 U.S. 99, 105 (1977).

Based on the City's evidence, and in light of the Court's decision in this Order not to preliminarily enjoin the $1,000 party contribution limit, the impact of Section 27.2936(b) on RPSD is not sufficiently immediate as to render the issue ripe for judicial decision. Therefore, Plaintiffs have not demonstrated a likelihood of success on the merits regarding this provision.

## II.     Remaining Requirements

Plaintiffs also have not met their burden of demonstrating: (1) the likelihood of irreparable harm in the absence of preliminary relief, (2) that an injunction is in the public interest, and (3) that the balance of equities tips in their favor. See Winter v. Natural Res. Def. Council, Inc., — U.S. —, 129 S.Ct. 365 (2008).

First, Plaintiffs have not demonstrated a likelihood of success on the merits, and therefore have not demonstrated a likelihood of irreparable harm if enforcement of these provisions is not enjoined. See id. at 375 (explaining that the moving party must demonstrate irreparable injury is "likely" in the absence of an injunction, rather than merely possible). Second, an injunction is not in the public interest. A preliminary injunction would affect the campaign finance rules for everyone in San Diego prior to the election season, and the public has an interest in maintaining the integrity of the electoral process. See McConnell, 540 U.S. at 136 (contribution limits "directly implicate 'the integrity of our electoral process'"). Although there is a significant public interest in upholding First Amendment rights, Plaintiffs have not demonstrated a likelihood of success on the merits on their First Amendment challenge. Finally, because Plaintiffs have not demonstrated they are likely to suffer irreparable harm or that the public interest weighs in favor of an injunction, the balance of equities does not tip in their favor.

Based on all the factors set forth in Winter, the Court finds preliminary relief is not warranted.

## CONCLUSION

Accordingly, the Court DENIES Plaintiffs' motion for temporary restraining order and preliminary injunction as to both the party contribution limit, ECCO § 27.2934, and the attribution requirement, ECCO § 27.2936(b).

**IT IS SO ORDERED.**

**DATED:** September 3, 2010

*[signature]*

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**