# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHIL THALHEIMER; ASSOCIATED BUILDERS & CONTRACTORS PAC SPONSORED BY ASSOCIATED BUILDERS & CONTRACTORS, INC. SAN DIEGO CHAPTER; LINCOLN CLUB OF SAN DIEGO COUNTY; REPUBLICAN PARTY OF SAN DIEGO; and JOHN NIENSTEDT, SR.,<br><br>                                   Plaintiffs,<br>    vs.<br>CITY OF SAN DIEGO,<br>                                   Defendant. | CASE NO.  09cv2862-IEG(BGS)<br><br>Order Granting Plaintiffs' Motion for Attorneys Fees |

Presently before the Court is Plaintiffs' motion for attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2) and 42 U.S.C. § 1988.  After full briefing, the Court found the matter appropriate for submission on the papers and without oral argument.  For the reasons explained herein, Plaintiff's motion is GRANTED.

## *Background*

The procedural history of Plaintiff's case is fully set forth in the Court's January 20, 2012 order granting in part and denying in part the parties' cross-motions for summary judgment. In short, Plaintiffs brought suit under 42 U.S.C. § 1983 challenging six provisions of San Diego's Municipal Election Campaign Control Ordinance ("ECCO").  The Court granted in part the

Plaintiffs' motion for preliminary injunction, and that decision was affirmed on appeal.[1] *Thalheimer v. City of San Diego*, 706 F. Supp. 2d 1065, 1088 (S.D. Cal. 2010), aff'd 645 F.3d 1109 (9th Cir. 2011). Ultimately, the Court granted summary judgment in favor of Plaintiffs on five of its nine causes of action, and granted summary judgment in favor of the City on the remaining claims.

Plaintiffs now move the Court for attorneys fees and expenses as the prevailing party in this action.

### *Legal Standard*

A party who prevails on its claim under 42 U.S.C. § 1983 may be allowed to recover a reasonable attorney's fee as a part of the costs. 42 U.S.C. § 1988. A "prevailing party" is one who "succeed[s] on any significant issue in litigation which achieves some benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The relief must "materially alter[] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000).

The lodestar method is the guiding principle in determining a reasonable attorney's fee. *City of Burlington v. Dague*, 505 U.S. 557, 560 (1992) (identifying lodestar as "the guiding light of our fee-shifting jurisprudence"). The lodestar figure "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "[T]here may be circumstances in which the basic standard of reasonable rates multiplied by reasonably expended hours results in a fee that is either unreasonably low or unreasonably high." *Blum v. Stenson*, 465 U.S. 886, 897 (1984). However, once the prevailing party has carried its burden of showing the reasonableness of the rate and the hours, "the resulting product is presumed to be the reasonable fee contemplated by § 1988." *Id*.

Where a party is only partially successful, and the successful and unsuccessful claims are "distinctly different claims for relief that are based on different facts and legal theories," the hours spent on unsuccessful claims should be excluded from the reasonable hours calculation. *Schwarz v.*

---

[1] While the appeal with regard to the preliminary injunction was pending, the City enacted a new ECCO provision. Plaintiffs filed an Amended Complaint and TRO challenging that provision. [Doc. 94.] The Court denied that TRO [Doc. 104.]

1  *Secretary of Health & Human Svcs.*, 73 F.3d 895, 901 (9th Cir. 1995). Where the successful and
2  unsuccessful claims are related, however, the court may adjust the total fee award either by
3  specifying particular hours to be eliminated, or by simply reducing the award to account for the
4  limited success. *Hensley*, 461 U.S. at 436.

## *Discussion*

### *1.     Reasonableness of Hours*

Plaintiffs have submitted the declarations of its attorneys, James Bopp Jr. and Gary D. Leasure, showing the hours actually worked on this case. In full, the billing records of Mr. Bopp's law firm reflect 688.9 hours spent by ten different attorneys on behalf of Plaintiffs in prosecuting successful claims in this Court and before the Ninth Circuit Court of Appeals. In arriving at that figure, the attorneys' billing records reflect adjustments for 151 hours originally billed by attorneys at the Bopp Law Firm, but not charged as a matter of "billing judgment" because they were determined to be excessive, redundant or otherwise unnecessary. [Declaration of James Bopp Jr. ("Bopp Decl."), ¶ 15 and Exhibit C (Billing Statement)(deducting hours as NO CHARGE with notation "billing judgment").] In addition, the billing records reflect a reduction of another 199 hours attributable to the unsuccessful claims. [Id., ¶¶ 18-19 and Exhibit C (deducting hours as NO CHARGE with notation "partial success").] In addition, the billing records and declaration of Mr. Leasure reflect 21.2 hours expended in prosecuting Plaintiffs' successful claims. Mr. Leasure exercised billing judgment and did not include in his billing statements hours which he determined were excessive, redundant, or otherwise unnecessary. [Declaration of Gary D. Leasure ("Leasure Decl."), ¶ 6.]

Reviewing counsel's declarations and billing statements, with the Court's knowledge of the complexity of the issues raised in this case, the Court finds Plaintiffs have satisfied their initial evidentiary burden of demonstrating the reasonableness of the hours sought. Plaintiffs' counsel has exercised billing judgment in a good faith effort to eliminate excessive, redundant, or otherwise unnecessary hours. *Hensley*, 461 U.S. at 434. In addition, Plaintiffs' counsel reviewed its work product and exercised judgment to exclude hours expended on unsuccessful claims, as reflected on its billing statements. The billing statements, along with counsels' declarations, fully

support Plaintiffs' request that they be awarded fees for the reasonable hours their attorneys spent successfully litigating this case.

The City asserts several particular challenges to the hours sought by Plaintiffs related to the appeal of the preliminary injunction, counsel's travel time, and administrative tasks.

### A.   Fees for Appeal

In its decision affirming this Court's preliminary injunction order, the Court of Appeals ordered "[e]ach party shall bear its own costs on appeal." The City argues this statements bars Plaintiffs from recovering attorneys fees for any work on the appeal. The Court disagrees.

Although the Ninth Circuit has not addressed the question, the Circuits which have explicitly addressed the issue have concluded that costs under Rule 39 do not include attorneys' fees under fee shifting statutes such as 42 U.S.C. § 1988. *McDonald v. McCarthy*, 966 F.2d 112, 115 (3d Cir. 1992); *Pedraza v. United Guarantee Corp.*, 313 F.3d 1323, 1330 n.12 (11th Cir. 2002) (citing *McDonald*, 966 F.2d at 116, for the "undoubtedly" correct and "uncontroversial conclusion that attorneys' fees are not included among the 'costs' contemplated by Rule 39"); *Chemical Mfrs. Ass'n v. EPA*, 885 F.2d 1276, 1278 (5th Cir. 1989); *Kelley v. Metropolitan County Bd. of Educ.*, 773 F.2d 677, 681 (5th Cir. 1981); *Robinson v. Kimbrough*, 652 F.2d 458, 463 (5th Cir. 1981); *Terket v. Lund*, 623 F.2d 29, 33 (7th Cir. 1980). In each of these cases, the courts noted the term "costs" is defined both in Fed. R. App. P. 39 and in the authorizing statute, 28 U.S.C. § 1920, to include "normal administrative costs such as those incurred in preparing the record, filing fees, and the cost of the reporter's transcript." *See, e.g. McDonald*, 966 F.2d at 116. "Accordingly, it would be 'inappropriate for this court to judicially-amend Rule 39's cost provisions to include § 1988 attorneys fees." *Id*. (citing *Kelley*, 773 F.2d at 682 n.5).

Nonetheless, the City argues controlling Ninth Circuit authority holds that attorneys fees are a part of the "costs on appeal" within the meaning of Fed. R. App. P. 39. In *Azizian v. Federated Department Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007), the Court of Appeals examined whether attorney's fees are part of "costs on appeal" under Fed. R. Civ. P. 7. The court noted a majority of courts had adopted a rule allowing the district court to require a Fed. R. Civ. P. 7 bond to include appellate attorney's fees if such fees would be recoverable costs under an applicable

fee-shifting statute. 499 F.3d at 955. The court also looked at the Supreme Court's decision in *Marek v. Chesny*, 473 U.S. 1 (1985), where the Supreme Court held the term "costs" in Fed. R. Civ. P. 68 included attorney's fees awardable under 42 U.S.C. § 1988. 499 F.3d at 957 (citing *Marek*, 473 U.S. at 9). Based upon *Marek* and the decisions of the other circuits, the Ninth Circuit Court of Appeals concluded "the term 'costs on appeal' in Fed. R. Civ. P. 7 includes all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's fees." 499 F.3d at 958. The City argues Fed. R. App. P. 39 likewise incorporates attorney's fees as part of the "costs" where provided by the underlying substantive statute.

The City's argument lacks merit. In *Azanian*, the Court explicitly recognized "that the costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal." 499 F.3d at 958. Unlike Fed. R. Civ. P. 7, Fed. R. App. P. 39 defines costs as the traditional administrative-type costs, such as preparation and transmission of the record, reporter's transcript, premiums paid for an appeals bond, and filing fee. Those costs are initially determined by the clerk, not the court, to be included in the mandate. Fed. R. App. P. 39(d). Furthermore, the court applies a different standard to determine whether a party is entitled to attorney's fees as a prevailing party under 42 U.S.C. § 1988, or costs under Fed. R. App. P. 39. For purposes of § 1988, a "prevailing party" is one who "succeed[s] on any significant issue in litigation which achieves some benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433. By contrast, an award of costs under Fed. R. App. P. 39 turns on whether there is a clear winner in the appeal. *Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1081 (9th Cir. 2009). The usual practice, when each side wins something and loses something, is to require each party to bear its own costs on appeal under Fed. R. App. P. 39. *Id*.

Finally, the Ninth Circuit has recognized that "[w]hen the federal statute forming the basis for the action has an express provision governing costs ... that provision controls over the federal rules." *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1190 (9th Cir. 2001); *Ocean Conservancy, Inc. v. Nat'l Marine Fisheries Svc.*, 382 F.3d 1159, 1161 (9th Cir. 2004) (rejecting appellee's argument they were entitled to costs under Fed. R. App. P. 39 because the underlying federal statute, the Endangered Species Act, provided that defendants are not entitled to costs and fees unless the

plaintiff's litigation was frivolous). Here, the underlying federal statute, 42 U.S.C. § 1988, provides that the court may award attorney's fees as an element of costs to a prevailing party. The City does not substantively dispute that Plaintiffs were the "prevailing party" within the meaning of § 1988 on the appeal. Therefore, the Court concludes the statement in the mandate, that each party is to bear its own costs on appeal, does not bar Plaintiffs from recovering their attorney's fees for the hours spent on the appeal.

### B. Fees for Travel Time

The City argues Plaintiffs are not entitled to fees for their attorneys' travel time from Indiana to San Diego because there was qualified counsel in Southern California which could have handled the case. In addition, the City argues Plaintiffs' "block billing" of 10-hours on travel days is unsupported because, on certain occasions, it resulted in double billing.

It was not unreasonable for Plaintiffs to retain the Bopp Law Firm, notwithstanding the subsequent need for travel. The Bopp Law Firm, and Mr. Bopp in particular, specializes in First Amendment campaign finance and election law. Plaintiffs were justified in retaining the firm, along with local counsel, to litigate the significant issues in this case. Nonetheless, Plaintiffs must demonstrate the hours sought for travel are reasonable. "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

Here, Mr. Bopp states that

> In order to ensure that clients or defendants are not over-charged for travel time, the attorneys in my firm bill a standard 10 hours per day when they are out of town for a case, regardless of whether they were actually in transit on those days. They also make every effort to use time spent waiting for or traveling on airplanes productively by reviewing case materials, preparing for the event to which they are traveling, or other similar activities. Because actual work time typically exceeds 12 hours or more on days outside the office, the 10 hour standard represents a sizeable undercharge from the actual billable hours expended.

[Bopp Decl., ¶ 14.] In response, the City has submitted the declaration of San Diego attorney Douglas Butz, indicating that in his experience, "it is not proper to bill clients at attorney rates for time in which services are not rendered." However, "[w]hen a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling." *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984); see also

1  *Saldana-Neily v. Taco Bell of America, Inc.*, 2008 WL 793872, *8 (N.D. Cal. Mar. 24, 2008)
2  (finding it proper to award attorneys fees for travel time based upon lost opportunity).  The Court
3  concludes the request for travel time is not unreasonable.

4  The billing records of the Bopp Law Firm reflect that attorney Joseph La Rue billed 43
5  hours of travel time, and Jim Bopp billed 30 hours of travel time.  The City objects that Mr. La
6  Rue also billed for 4 hours of "prep for oral argument" time on February 1, 2010, but a review of
7  the billing reflects the firm already deducted this amount as a matter of billing judgment.
8  Similarly, on April 28, 2010, the billing reflects a total of 18.5 hours, but the firm already in its
9  billing judgment did not charge for 4.7 of those hours.  Mr. Bopp has submitted a supplemental
10 declaration clarifying that Plaintiffs do not seek fees for any time beyond 10 hours on any travel
11 day. [Supplemental Declaration of James Bopp, Jr. ("Bopp Supp. Decl."), ¶ 3.]  Thus, the Court
12 will deduct from the final calculation of Plaintiffs' fees in this case the additional 3.8 hours by Mr.
13 LaRue on April 28, 2010.

14  C.  Fees for Administrative Tasks

15  Finally, the City argues Plaintiffs' counsel improperly billed nearly 17 hours of
16 administrative tasks.  The City points to three particular examples of improperly billed tasks:

17  •  2.9 hours by Mr. La Rue on December 18, 2009, for "Final draft work on
18      preliminary injunction; *prepare table of contents and authorities*; send to clients
19      and attorneys" [Billing Stmt., p. 16];

20  •  two different entries by Mr. La Rue on December 24 and 28, 2009, totaling 1.3
21      hours to "Read/reply to emails from clients concerned about the slant the press is
22      putting on the lawsuit" and "Read/reply to email from [one of the named Plaintiffs]
23      regarding press release he wanted to send out" [Billing Stmt., p. 18]; and

24  •  .8 hours by Mr. Gallant on February 24, 2012 to "Prepare and send courtesy copies"
25      [Billing Stmt., p. 94.]

26 The City has prepared a chart summarizing the hours it believes improperly stem from attorneys
27 performing "administrative/miscellaneous" tasks. [Declaration of John Schena, ¶ 7, Exhibit E.]
28 According to the summary, 8 attorneys spent a total of 16.9 hours, and incurred $6,584.29 in costs,

1 on "administrative/miscellaneous" tasks.  However, the City has provided no citation to the billing
2 records, specifying in any way what particular billing entries are purportedly improper.

3       Attorneys fees should not be given for the performance of administrative tasks which could
4 and should be performed by secretarial or paralegal staff.  *Missouri v. Jenkins*, 491 U.S. 274, 288
5 (1989).  Tasks such as creating a table of contents or making copies can and should ordinarily be
6 performed for administrative staff, rather than by attorneys billing at attorney rates.  *Mogck v.*
7 *Unum Life Ins. Co.*, 289 F. Supp. 2d 1181, 1193 (S.D. Cal. 2003).  However, time billed related to
8 press releases is properly included in a request for fees under § 1988 where such activities "are
9 'directly and intimately related to the successful representation of a client'."  *Gillbrook v. City of*
10 *Westminster*, 177 F.3d 839, 876 (9th Cir. 1999) (quoting *Davis v. City and County of San*
11 *Francisco*, 976 F. 2d 1536, 1545 (9th Cir. 1992)).

12       Once the fee applicant has come forward with evidence demonstrating the reasonableness
13 of the hours sought, "[t]he party opposing the fee application has a burden of rebuttal that requires
14 submission of evidence to the district court challenging the accuracy and reasonableness of the ...
15 facts asserted by the prevailing party in its submitted affidavits."  *Camacho v. Bridgeport*
16 *Financial, Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (ciring *Gates v. Deukmejian*, 987 F.2d 1392,
17 1397 (9th Cir. 1992)).  Here, the Plaintiffs have submitted a declaration attesting that all of the
18 services performed by the attorneys at the Bopp Law Firm "were reasonably and necessarily
19 performed in Plaintiffs' cause." [Bopp Decl., ¶ 7.]  Upon review, the Court notes the Bopp Law
20 Firm already, in its billing discretion, declined to charge for most of the time related to press
21 release activities. [*See e.g.*, Billing Stmt., pp. 17, 18, 23, 51 (noting "no charge" in "billing
22 judgment" for multiple billing entries by Mr. La Rue related to press release), p.87-88
23 (designating entries by Ms. Phillips related to press release as "no charge").]  From the Court's
24 review, it appears the only time for which counsel charged was spent directly responding to client
25 inquiries, tasks which "directly and intimately relate[] to the successful representation of a client."
26 *Gillbrook*, 177 F.3d at 876.

27       The Court also notes that the Bopp Law Firm has exercised billing judgment to delete
28 charges for the vast majority of billing entries related to "administrative" tasks such as preparing

1 tables of contents and authorities, downloading and emailing documents, assembling litigation
2 notebooks, preparing shipping labels and courtesy copies, etc.  [*See e.g.,* Billing Stmt. p. 24 (1
3 hour by Josiah Neely in preparing table of contents), 25 (2.6 hours by Mr. La Rue in adding table
4 of contents and table of authorities pages), 35 (1.4 hours by Mr. La Rue in adding cases to table
5 of authorities), 39 (2 hours of time by Mr. La Rue in preparing table of contents and table of
6 authorities), 42 (.4 hours by Ms. Philips to retrieve and email copies of court documents), 43 (.4
7 hours by Mr. La Rue to compile and file docs for amended complaint), 45 (.9 hours by Mr. La Rue
8 in preparing table of contents and table of authorities), 46 (1.1 hours by Mr. La Rue and .4 hours
9 by Elizabeth Kosel to assemble litigation notebook, proof read brief, and assist with table of
10 contents), 66 (.8 hours by Noel Johnson to prepare FedEx label and courtesy copies), 67 (.6 hours
11 by Ms. Phillips to work on table of contents and table of authorities, .3 hours relating to updating
12 email and CM/ECF information, and 1.6 hours to organize the summary judgment documents), 82-
13 83 (2.3 and 1.6 hours by Ms. Phillips for organizing documents for hearing folder), 84 (2.2 hours
14 by Ms. Phillips for travel file), 86 (.6 hours by Ms. Phillips to obtain and fill out pro hac vice
15 applications) .]
16    The City's opposing evidence, which merely summarizes but fails to specify the
17 purportedly inappropriate hours, is insufficient to rebut the Plaintiffs' showing of reasonableness.
18 *See e.g., Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (specifically identifying
19 particular, objectionable, time entries).  Aside from going entry-by-entry through the 94-page
20 billing statement submitted by the Bopp Law Firm, the Court has no reasoned method to determine
21 which of the purported administrative/miscellaneous hours are reflected on the City's Exhibit E.
22 Given the extensive degree of billing judgment already demonstrated by Plaintiffs' counsel, the
23 Court declines to engage in such an exercise.  The Court concludes Plaintiffs have demonstrated
24 the reasonableness of the hours sought, including any time purportedly spent on administrative
25 tasks.
26 *2.    Reasonableness of hourly rates*
27    The moving party bears the burden of proof as to the prevailing market rate.  *Sorenson v.*
28 *Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) (quoting *Blum*, 465 U.S. at 895 n.11).  "The established

1 standard is the 'rate prevailing in the community for similar work performed by attorneys of
2 comparable skill, experience, and reputation'." *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)
3 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986)).  In addition to
4 considering affidavits and evidence submitted by the parties, the court may "rely on its own
5 familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

6 Plaintiffs seek fees ranging from $225 to $600 per hour depending upon the experience and
7 specialization of the particular attorney. [Bopp Decl., ¶¶ 10-12.] In particular, Plaintiffs argue
8 their counsel's reasonable hourly rates are as follows:

```
James Bopp (39 years experience)               $600/hr.
Mr. Coleson (25 years experience)              $550/hr.
Mr. Elf (14 years experience)                  $465/hr.
Mr. Gallant (11 years experience)              $450/hr.
Mr. Neely (8 years experience)                 $350/hr.
Ms. Woudenberg (8 years experience)            $350/hr.
Mr. LaRue (6 years experience)                 $350/hr.
Mrs. Phillips (4 years experience)             $285/hr.
Ms. Kosel and Mr. Johnson (2 years experience) $225/hr.
```

14 [Bopp Decl., ¶ 10.] Plaintiffs have submitted declarations by Mr. Bopp, as well as attorneys James
15 Wagstaffe and Bradley Hertz, to establish these are the prevailing market rates for attorneys with
16 similar levels of experience and expertise in the Southern District of California.  Both Mr.
17 Wagstaffe and Mr. Hertz confirm the hourly rates sought by Plaintiffs application are "well within
18 the range of hourly rates charged by attorneys of equivalent experience, skill, and expertise for
19 comparable work in the geographic area in question." [Declaration of James Wagstaffe, ¶ 12.;
20 Declaration of Bradley Hertz, ¶ 10.]

21 In opposition, the City argues Plaintiffs' requested hourly rates are exceedingly high and
22 do not reflect the prevailing market rate for comparable services in the Southern District of
23 California. [Declaration of Dick Semerdjian, ¶ 7; Declaration of Douglas Butz, ¶ 13.] The City
24 points to the fact Plaintiffs' local counsel, a San Diego attorney with twelve years experience,
25 requests a lower hourly rate than that of the mid-level associates at the Bopp Law Firm with half
26 his experience. [Declaration of Gary Leasure, ¶¶ 2, 4 (requesting hourly rate of $325).] The City
27 also points to the fact its own attorney in this case charged $230/hr. for work in this case.
28 [Semerdjian Decl., ¶ 4.]  The City's expert opines that the prevailing rate in the Southern District

of California for litigation involving constitutional issues is $375 to $425/hr. for partner time, and $250 to $300/hr. for associate time. [Butz Decl., ¶ 13.] Finally, the City cites an attorneys fees award Plaintiffs' counsel obtained in the Eastern District of California 3½ years ago, where the rates requested were substantially lower. *California Pro-Life Council, Inc. v. Randolph*, 2008 WL 4453627 (E.D. Cal. 2008) (requesting $385/hr for Mr. Bopp, $325/hr for Mr. Coleson, and $265/hr for Mr. Gallant). Based thereon, the City requests the Court adjust the hourly rates of Plaintiffs' counsel as follows:

| | |
|---|---|
| Attorneys Bopp, Coleson, Elf, and Gallant | $425/hr. |
| Attorneys La Rue, Woudenberg, and Neeley | $300/hr. |

[Declaration of John Schena, Exhibit G.]

The Court is not persuaded by the City's citation to rates awarded to the Bopp Law Firm 3½ years ago in the Eastern District of California. There is no evidence the prevailing rates in the legal communities in Sacramento, Fresno, and Bakersfield are substantially the same as those in the Southern District of California. *Christensen v. Stevedoring Svcs. of Am.*, 557 F.3d 1047, 1053 (9th Cir. 2009) (relevant legal community is the "forum in which the district court sits"). In addition, those fees were requested more than 3½ years ago, but fees are to be determined by application of current, rather than historic, hourly rates. *Id*. at 1054. Fees charged by the City's counsel in this case are likewise not persuasive as private attorneys hired by a government entity are not in the same legal market as private attorneys who prosecute civil rights cases. *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996).

The Court takes into consideration the novelty and difficulty of the issues involved in this case, and the skill required to litigate those issues. *Id*. (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). Based upon the evidence submitted by Plaintiffs, as well as the Court's knowledge of the complexity of this case and the legal market, the Court finds Plaintiffs have established that the hourly rates requested are within the range of of hourly rates charged by attorneys of equivalent experience, skill, and expertise for comparable work in the Southern District of California.

*3. Limited Success*

The City argues Plaintiffs' attorneys fees should be reduced across-the-board by fifty

1  percent to account for Plaintiffs' limited success in this matter.  The City argues only fifty percent
2  of Plaintiffs' counsel's work – whether in drafting the complaints, preliminary injunctions,
3  summary judgment motions, or corresponding with clients – resulted in the relief ultimately
4  gained. However, Plaintiffs' billing statements are very detailed, allowing counsel to determine
5  particular time and tasks attributable to the unsuccessful claims.  In seeking fees, Plaintiffs'
6  counsel carefully analyzed the amount of briefing and other work attributable to the successful and
7  unsuccessful claims.  [Bopp Decl., ¶ 18.]  Counsel then made a good faith effort to deduct for
8  items in the billing record which were attributable only to the unsuccessful claims, resulting in the
9  reduction of approximately 199 hours and $1476 in expenses originally billed by the Bopp Law
10 Firm.

11    "A reduced fee award is appropriate if the relief, however significant, is limited in
12 comparison to the scope of the litigation as a whole."  *Hensley*, 461 U.S. at 440.  Thus, if Plaintiffs
13 had prevailed on only one or two of its challenges to the ECCO, the Court appropriately would
14 reduce the overall fee award by at least half.  However, not only did Plaintiffs prevail on more than
15 half of the claims they asserted, but the result also conferred a meaningful public benefit.  *McCown*
16 *v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (discussing when and how fees should be
17 reduced based upon limited success).  Although the Plaintiffs challenged six separate provisions of
18 the ECCO, those provisions and the legal analysis of Plaintiffs' claims were often interrelated.
19 The City provides no analysis supporting its conclusion that only fifty percent of any of Plaintiffs'
20 counsel's work is attributable to the successful claims.  The Court declines to further reduce
21 Plaintiffs' fees based upon Plaintiffs' limited success, and finds the 199 hours already deducted by
22 counsel in their billing statements reasonably account for the unsuccessful claims.

23 *4.    Local Counsel*

24    Local counsel, Mr. Gary Leasure, has submitted a declaration seeking fees and costs in the
25 total amount of $6,977.08.  The City challenges neither the reasonableness of his hourly rate
26 ($325/hr.) or the reasonableness of the hours he expended in this case. Upon review, the Court
27 finds those fees and costs to be reasonably incurred in representing Plaintiffs in this action.
28

5.     *Costs*

Plaintiffs seek recovery of $10,402.04 in costs. [Bopp Decl., ¶ 22, and Exhibit C, p. 107.] The Bopp Law Firm has already deducted $5,760.30 in expenses as a matter of billing judgment or as related to unsuccessful claims. [*Id*. ¶¶ 17, 18, and 19.] The City argues Plaintiffs are not entitled to any "taxable costs" within the meaning of Fed. R. Civ. P. 54 because Plaintiffs failed to timely file a bill of costs pursuant to Civ. L.R. 54.1. In addition, the City argues Plaintiffs are not entitled to costs associated with travel or for long distance phone calls and internet usage for research.

The scope of costs taxable by the Clerk are set forth in 28 U.S.C. § 1920, Fed. R .Civ. P. 54, and Civ. L.R. 54.1. The City has cited no authority requiring a prevailing party to file a separate bill of costs under Civ. L.R. 54.1 where, as here, the party is also seeking reasonable attorney's fees as part of its costs. It would make little sense to require Plaintiffs to submit a separate bill of costs where a fee-shifting statute such as § 1988 authorizes the recovery of "reasonable attorney's fee as part of the costs." Under such circumstances, a prevailing plaintiff is permitted to recover out-of-pocket litigation expenses that would normally be charged to a fee-paying client even if such expenses cannot be taxed as "costs." *Grove v. Wells Fargo Financial California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010); *Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (computer-based legal research expenses are compensable out-of-pocket expenses if customarily billed to clients). Thus, even if certain expenses are technically not taxable as costs under Fed. R. Civ. P. 54, Civ. L.R. 54.1, and § 1920, those expenses may be recoverable by Plaintiffs as the prevailing party under § 1988.

Plaintiffs have submitted evidence that it is the prevailing practice for attorneys to separately bill clients for out of pocket and otherwise non-taxable expenses such as telephone charges, copies, filing fees, courier and mailing fees, and internet research. [Hertz Decl., ¶ 12; Wagstaffe Decl., ¶ 13.] In addition, necessary travel expenses are recoverable. *Grove*, 606 F.3d at 581. Thus, the Court concludes Plaintiffs' counsel's costs as itemized on their billing statements are properly included in the attorney's fees award.

*<u>Conclusion</u>*

For the reasons set forth herein, the Court GRANTS Plaintiffs' motion for attorneys fees. The Court awards fees and costs in the total amount of $272,697.97.[2]

**IT IS SO ORDERED**.

**DATED: April 26, 2012**

                             *Irma E. Gonzalez*
                             **IRMA E. GONZALEZ, Chief Judge**
                             **United States District Court**

---

[2]This figure represents the $258,781.39 in fees and costs included in the Bopp Law Firm's initial declaration, plus $8,269.50 in fees and expenses for the briefing on the attorneys' fees motion, less $1330 in fees attributable to excess travel time as noted in section 1.B of this order at page 7. It also represents $6,977.08 in fees attributable to the work performed by Mr. Leasure in this case.